R. W. SIMS, Trustee and R. W. Sims Trust, Appellants in Nos. 78–2517/18/19/20,

v.

MACK TRUCK CORPORATION Mack Trucks, Inc., Appellant in No. 78–2516.

Nos. 78–2516—78–2520.

United States Court of Appeals, Third Circuit.

Argued Aug. 8, 1979.

Decided Oct. 16, 1979.

---

Jon A. Baughman (argued), Deborah F. Cohen, Stephen J. Sundheim, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellant in No. 78–2516 and appellee in Nos. 78–2517—78–2520.

John A. Young (argued), Fort Wayne, Ind., for appellees in No. 78–2516 and appellants in Nos. 78–2517—78–2520; Stanley B. Kita, Howson & Howson, Philadelphia, Pa., co-counsel.

Before ALDISERT and WEIS, Circuit Judges, and DIAMOND, District Judge.*

* Honorable Gustave Diamond, United States District Court for the Western District of Pennsylvania, sitting by designation.

1. For reasons not here relevant, plaintiffs' unfair competition claim appears in *two* separate lawsuits. In Civil No. 75–985, the case that we are entertaining on appeal, the unfair competition claim is Count II of a two-count complaint, the first count charging defendant with patent infringement. In Civil No. 76–2070, the unfair competition claim comprises the only count of the complaint. By opinion dated February 8, 1978 and orders dated February 9, 1978 and

## OPINION OF THE COURT

WEIS, Circuit Judge.

■ Changing the discharge point of a concrete mixer from the rear to the front of the truck results in definite advantages but does not raze the roadblock of nonobviousness required for patentability. We therefore reverse a district court finding of patent validity. We find jurisdiction also to review a companion count alleging conversion of trade secrets related to the construction of concrete mixers. Because that claim contains disputed matters of fact, we vacate a summary judgment entered in favor of the defendant.

By virtue of an assignment in 1965, plaintiffs R. W. Sims, Trustee, and the R. W. Sims Trust hold U.S. Patent No. 2,859,949 issued in 1958 to J. Jack Willard for a front-discharge concrete mixer. The pending action is based on allegations of infringement by defendant and an additional count of unfair competition. The district court entered summary judgment in favor of the defendant on the unfair competition count on February 9, 1978.[1]

After a bench trial, the district judge upheld the patent, found that the defendant had infringed, and awarded double damages to the plaintiff, but denied attorneys' fees. The defendant appeals the infringement issues under 28 U.S.C. § 1292(a)(4). Plaintiffs cross-appeal the denial of the attorneys' fees and seek review of the summary judgment on the unfair competition claim.

The Willard patent describes a concrete mixer mounted on a truck chassis and used

April 18, 1978, Judge Lord dismissed this claim as found in *both* complaints. *See Sims v. Mack Trucks, Inc.,* 444 F.Supp. 1277 (E.D.Pa.1978). Civil No. 75–985 then proceeded to trial on the patent infringement issue. After the trial, plaintiffs appealed from both dismissals, with the appeals filed October 13, 1978. No. 78–2518 is Sims's appeal as to Civil No. 75–985. Nos. 78–2519/20 are the appeals from Civil No. 76–2070. Clearly, the appeals from Civil No. 76–2070 (Nos. 78–2519/20) are infirm because plaintiffs failed to comply with the 30-day time limit of Fed.R.App.P. 4.

to deliver premixed concrete to a construction site. The more common truck in general use unloads the concrete from the rear. The Willard design, however, reverses the mixing drum so that its narrow discharge end is at the front rather than the rear of the truck. The drum is inclined upward toward the front so that the pour end is above the driver's cab. A portable chute is used to move the concrete from the drum to the particular spot where the construction is in progress.

The great advantage of the front-end discharge is that it allows the truck to be driven directly to the place where the concrete is to be poured without the necessity of backing into the area, as is required with vehicles of conventional configuration. Thus, the dangers of backing to the unloading site are eliminated, and by maneuvering the truck the driver can assist in the actual pouring of the concrete. In a modification added by plaintiff Sims, the driver may sit in the cab and shift the chute by means of hydraulic controls.

Willard first applied for the patent on July 18, 1955, but it was not granted until 1958. On November 14, 1955, Evan S. Pritchard filed an application for a front-discharge mixer of similar construction. In 1958 plaintiff Sims also considered applying but decided against it when he learned of Willard's patent. At first, the Willard truck met with little commercial success, and in 1965 it was assigned to the Sims Trust. Thereafter, plaintiffs successfully marketed licenses to a number of manufacturers.

Defendant considered the possibility of manufacturing front-end discharge trucks in 1963 and met with Sims at that time to discuss a possible licensing arrangement. Although Sims was not at that time the holder of the Willard patent, Mack's interest in him was aroused by his development of one of the first technically and commercially feasible front-discharge mixers. After some study, however, defendant decided not to enter the market. In late 1972, defendant conducted a new market survey and concluded that it should reevaluate its position. The following year, defendant modified an existing chassis to accommodate a front-discharge mixer and in the next four years sold a number of chassis, some with the mixer attached. Although the record does not establish when those transactions took place, it does reveal that defendant exhibited a front-discharge mixer in two trade shows before the patent expired in 1975.

In a detailed and scholarly opinion,[2] the district judge concluded that the defendant had failed to prove obviousness. Recognizing that the front-discharge mixer concept was a combination of known components, the court nevertheless determined that because of the combination's "synergistic" effect, the patent survived the required close judicial scrutiny. In response to defendant's contention that there was no infringement because the mixer drums mounted atop the Mack truck chassis were purchased from a licensee, the court ruled that Mack had waived the license defense by not pleading it in its answer. Double damages were determined to be appropriate because the defendant willfully infringed, but since the defenses of invalidity and noninfringement were colorable and nonfrivolous, counsel fees were denied the plaintiffs.

## VALIDITY

As its principal defense, Mack contends that the Willard patent was invalid on the ground of obviousness, 35 U.S.C. § 103. We turn to that issue first.

The courts have long adhered to the principle that patents are not to be issued for every device effecting some improvement, but only for those that may be called "inventions." The problem of separating the two was recognized early by Jefferson, whose duties as Secretary of State included administration of the patent system. It was his belief that the limited monopoly sanctioned by the Constitution should be construed narrowly: "Only inventions and discoveries which furthered human knowl-

---

**2.** The opinion is reported at 459 F.Supp. 1198 (E.D.Pa.1978).

edge, and were new and useful, justified the special inducement of a limited private monopoly." *Graham v. John Deere Co.*, 383 U.S. 1, 9, 86 S.Ct. 684, 689, 15 L.Ed.2d 545 (1966) (discussing Jefferson's views).

In *Hotchkiss v. Greenwood*, 11 How. 248, 52 U.S. 248, 13 L.Ed. 683 (1850), the Supreme Court, in one of its first expressions of this sentiment, said that if "that degree of skill and ingenuity which constitute essential elements of every invention" were absent, the improvement would be only the "work of the skilful mechanic, not that of the inventor." *Id.* at 267. Attempts over the next hundred years, however, were unsuccessful in producing a workable definition of invention, and in the 1952 Patent Act, Congress attempted to resolve the issue by enacting § 103, which reads in pertinent part:

> A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Some years passed before the Court had occasion to review this standard, but it finally did so in *Graham v. John Deere Co., supra,* articulating the three factual inquiries that underlie a determination of obviousness:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. *Id.* at 17, 86 S.Ct. at 694.

In addition, the Court indicated that secondary considerations might have relevancy in determining obviousness and listed such matters as the commercial success of the device, long felt but unresolved needs, and the failure of others. *Id.* But these factors "cannot, by themselves, support a finding of nonobviousness if it is otherwise established that a patent's disclosures are obvious in light of the prior art." *Tokyo Shibaura Electric Co. v. Zenith Radio Corp.*, 548 F.2d 88, 94–95 (3d Cir. 1977).

The patent bar read *Graham* as adopting a more liberal view toward patentability, and as moving away from the invention concept treated in *Hotchkiss v. Greenwood, supra,* and *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950). In two later cases, however, *Anderson's-Black Rock, Inc. v. Pavement Salvage Co.*, 396 U.S. 57, 61, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969), and *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 279, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976), the Court reiterated that constitutional limitations, which find expression in the invention concept, restrict patentability. The Court also had some special words about patents utilizing a combination of elements known in the prior art:

> 'Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. . . . A patent for a combination which only unites old elements with no change in their functions . . . obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. . . .' *Sakraida v. Ag Pro, Inc., supra* at 281, 96 S.Ct. at 1537, *quoting Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra* at 152–53, 71 S.Ct. 127.[3]

---

**3.** For an interesting contrast of views on the *Sakraida* case and its underlying philosophy, *compare* Sears, Combination Patents and 35 U.S.C. § 103, 1977 Det.C.L.Rev. 83 (generally favoring the strict patentability approach) *with* Mintz, The Standard of Patentability in the United States—Another Point of View, 1977 Det.C.L.Rev. 755 *and* Judge Rich's article, Laying the Ghost of the "Invention" Requirement, 1 Am.Pat.L.A.Q.J. 26 (1972) (taking the liberal view).

The controversy has by no means subsided. In *Roanwell Corp. v. Plantronics, Inc.*, 429 U.S. 1004, 97 S.Ct. 538, 50 L.Ed.2d 617 (1976), Jus-

Thus, the courts, in determining obviousness in a combination patent, must undertake the tripartite *Graham* inquiry without losing sight of the necessity to determine whether the device performs its function in an innovative fashion.

There was little dispute among the parties as to the scope of prior art. The mixing drum was constructed with interior helical blades. Rotating the drum in one direction caused the concrete to be mixed, counterrotation pushed the concrete through the discharge opening. This type of drum made it possible to have a high pouring point since the unloading did not depend on gravity. Patents for this drum design had been obtained before 1955.[4] The prior art also included open and closed chutes to direct the flow of concrete from the drum discharge to the delivery point.[5]

The most important reference in the prior art was the Payne patent,[6] describing a mixing truck that discharged concrete at the front of a cylindrical drum by tilting the drum forward and emptying it by gravity. The driver controlled the unloading by operating a lever that caused the rear of the drum to be raised. The concrete would slide out through a trough beneath the truck cab into a portable distributing cart, which was then wheeled to the desired delivery point. The Payne plan of discharging into a cart and thence to the construction point differs from the Willard's discharge into a chute to the construction point, but, as the district judge noted, that difference does not necessarily make the Willard subject matter nonobvious.

The prior art discloses, therefore, that the three main components of the Willard patent, a mixing drum with a high discharge opening, use of a chute for pouring to the construction point, and unloading at the front of the truck, were all matters of record in the patent office before 1955. The components, that is the drum and the chute, performed the same functions in the same way as they had previously, and the concept of pouring to the front with the attendant advantages was the same as that previously disclosed.

In essence, the Willard concept did nothing more than flip the discharge end of the drum from the rear to the front of the truck. That it offered advantages in delivery of the concrete to the construction point, such as reduction of outside help in positioning the chute, is clear. But the gains in maneuverability and elimination of backing the truck, which are characteristics of the front-discharge mode, were also present in the Payne patent.

In these circumstances, the third *Graham* inquiry—obviousness to a person having ordinary skill in the pertinent art—presents some problems. In the usual case, validity will hinge on the answer to this question. In the context of combination patents, however, the Supreme Court, in *Sakraida v. Ag Pro, Inc., supra,* teaches that the answer will be affected by the fact that the device is a combination of components known to the prior art.

The *Sakraida* patent, a barn-cleaning system, was a combination of elements causing a cascade of water to flow across a barn floor with a striking cleansing action. In

tice White, while acknowledging that the Court's "crowded docket does not permit review of every case where error has been committed," *id.* at 1009, 97 S.Ct. at 541, dissented together with Justice Brennan from the denial of certiorari in a case where the court of appeals affirmed a district court ruling of nonobviousness in a combination patent. The dissenters noted that each element in the combination had previously been used to perform the same function it now performed in respondent's device, and that, therefore, the patent was obvious under the reasoning of *Black Rock* and *Sakraida.*

**4.** U.S. Patent No. 2,661,935 issued on December 8, 1953 to Carl L. Willard. U.S. Patent No. 2,672,327 issued on March 16, 1954 to John F. Oury. U.S. Patent Reissue 23,320 reissued on January 2, 1951 to Carl L. Willard and J. Jack Willard.

**5.** U.S. Patent No. 2,045,532 issued on June 23, 1936 to John C. Merwin and Charles F. Ball. *See also* the Oury patent, *supra* note 4.

**6.** U.S. Patent No. 1,509,055 issued on September 16, 1924 to Charles F. Payne.

entering a judgment of validity, the court of appeals had found the plaintiff's evidence "a full and lucid view of . . . the prior art" showing an "inventive 'breakthrough,'" as contrasted with defendant's "meager," "paltry factual presentation." *Ag Pro, Inc. v. Sakraida,* 474 F.2d 167, 170 (5th Cir. 1973). The defendant's single trial witness, a person who ran a dairy, testified that certain elements of the plaintiff's patent—paved sloped floors with downhill drains and raised stalls—were known to the prior art. In addition, three affidavits were submitted, including one by the defendant himself, stating that there was nothing novel or patentable in plaintiff's device. Plaintiff, on the other hand, "painted a convincing picture of a nonobvious advance" through "vivid documentary evidence" and the testimony of an agricultural engineer which presented "the only technical analysis of the prior art." *Id.*

Despite the court of appeals's meticulous review of the evidence and adherence to the *Graham* standard, the Supreme Court, in a brief and unanimous opinion, reversed. In the Court's view, the device was the work of a skillful mechanic rather than that of an inventor, and amounted to no more than an "assembly of old elements [that] would be obvious to any person skilled in the art of mechanical application." 425 U.S. at 282, 96 S.Ct. at 1537. *Sakraida* thus indicates that in some circumstances, the standard of a "person having ordinary skill in the art to which the said subject matter pertains" may not be a demanding one.

This nuance did not escape the able district judge in the case *sub judice.* Although he determined that the "hypothetical person skilled in the pertinent art was the designer of self-transit concrete mixing trucks," 459 F.Supp. at 1211, the judge also concluded that a "reasonable person" would not find the combination obvious on the basis of the prior art. *Id.* at 1214. In the judge's view, however, the latter standard would not be in conformance with the *Graham* formula.

The trial court's position is understandable. The "art to which the said subject matter pertains" and the "person having ordinary skill" in that art are hardly precise notions. Indeed, our opinions in *Systematic Tool & Machine Co. v. Walter Kidde & Co.,* 555 F.2d 342 (3d Cir.), *cert. denied,* 434 U.S. 857, 98 S.Ct. 178, 54 L.Ed.2d 128 (1977), and *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corp.,* 546 F.2d 530 (3d Cir. 1976), *cert. denied,* 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977), reflect the difficulty that courts have had with the third *Graham* test.

In *Systematic Tool,* we held that a tomato slicer would have been obvious to a mechanic familiar with the design of food slicers and that an engineer with ordinary mechanical or design skills—not specifically those of designing food slicers—possessed the requisite skill in the art. In *Universal Athletic Sales,* however, we determined that the pertinent art was the design of body exercising apparatus rather than mechanical engineering or weight lifting. In that case, the device under consideration was designed to eliminate the problems inherent in the "chest press" exercise, a highly specialized art. *Cf. Hadco Products, Inc. v. Walter Kidde & Co.,* 462 F.2d 1265, 1271–72 (3d Cir.), *cert. denied,* 409 U.S. 1023, 93 S.Ct. 464, 34 L.Ed.2d 315 (1972) (a pre-*Sakraida* case asserting that the standard of obviousness is tied "to a worker of ordinary skill in the art" rather than the "ordinary observer" in a design patent case).

The district court, in adopting the standard of a designer of self-transit concrete mixers, declined to give controlling weight to the testimony of some of defendant's experts, none of whom were mixer designers. In our view, however, this standard is unduly restrictive when the combination is merely a rearrangement of components disclosed in the prior art. *Sakraida* seems to make suspect any standard that is more restrictive than that of a mechanic familiar with the design of concrete mixers. Accordingly, although it is arguable that defendant's evidence was adequate even under the more restrictive standard, the defense did produce ample testimony that one

familiar with the design of concrete mixers would have found the Willard patent obvious. Looking at this record through *Sakraida* eyes leads us to conclude that the Willard patent was obvious to a mechanic familiar with the design of concrete mixers as well as to a reasonable man. We therefore hold that the application of the *Graham* criteria compels a finding of obviousness.

In addition to the required *Graham* analysis, the district court also found that the Willard patent produced a marked synergistic effect in that concrete was discharged in view of the driver in the cab and, less significantly, that there was a better weight distribution than in conventional mixers. As the court put it, "[t]he Willard patent deploys these components in a fashion that produces an entirely new result, not merely a 'more striking' version of an old one." 459 F.Supp. at 1215. This finding was no doubt an attempt to comply with language in Supreme Court opinions suggesting that combination patents, to be valid, must produce a synergistic effect—one which "'results in an effect greater than the sum of the several effects taken separately.'" *Sakraida v. Ag Pro, Inc., supra* at 282, 96 S.Ct. at 1537, *quoting Anderson's-Black Rock, Inc. v. Pavement Salvage Co., supra* at 61, 90 S.Ct. 305.

In view of our holding that the patent at issue fails to meet the test for obviousness set down by *Graham*, we need not rule on the question whether a finding of synergism is a precondition to validity in all such cases.[7] We do note, however, that the Willard design is no more striking an improvement than those found to be inadequate for a combination patent in *Sakraida* or in *Black Rock*. In the latter case, the combination of a radiant heat burner and other elements on one chassis of a road paving machine, though a convenient device fulfilling a useful function and addressing a long felt need, was not an invention by the obvious-nonobvious standard.

The Supreme Court precedents binding on us require that we declare the Willard patent invalid and, accordingly, we do not meet the question of infringement and denial of attorneys' fees.[8]

## JURISDICTION OVER THE UNFAIR COMPETITION CLAIMS

Defendant's appeal from the district court ruling on validity and infringement is grounded on 28 U.S.C. § 1292(a)(4), which confers jurisdiction on the courts of appeals in all "[j]udgments in civil actions for patent infringement which are final except for accounting." Plaintiffs have cross-appealed the order of the district court granting summary judgment on Count II of the complaint, which alleges conversion of trade secrets. Defendant contends we have no jurisdiction to consider that cross-appeal since no final judgment has been entered in the district court in the patent phase of the litigation, and our review under § 1292(a)(4) is limited to the issues of patentability and infringement.

Our research and that of counsel has not revealed any controlling case law. In two cases ruling on requests for injunctions for infringement, *Paeco, Inc. v. Applied Moldings, Inc.*, 562 F.2d 870 (3d Cir. 1977), and *W. L. Gore & Associates, Inc. v. Carlisle Corp.*, 529 F.2d 614 (3d Cir. 1976), we held that appeals under another interlocutory provision, 28 U.S.C. § 1292(a)(1), were limited to the issues bearing on the denial of injunctive relief and did not extend to other claims or issues determined by the judgment. It has also been held, however, that an appeal under § 1292(a)(4) will not lie for any claim unless there have been final orders (or compliance with Fed.R.Civ.P. 54(b)) entered in the district court on all other

7. The courts of appeals have split on the question. *See Plastic Container Corp. v. Continental Plastics, Inc.*, 607 F.2d 885 (10th Cir. 1979); *Satco, Inc. v. Transequip, Inc.*, 594 F.2d 1318, 1322 (9th Cir. 1979), *cert. denied,* —— U.S. ——, 100 S.Ct. 137, 62 L.Ed.2d 89 (1979), and cases cited therein.

8. Our silence on the waiver of the license defense in the circumstance of this case should not be construed as agreement with the ruling of the district court.

issues joined with those of patent validity and infringement. *See Bergman v. Aluminum Lock Shingle Corp.*, 237 F.2d 386, 387 (9th Cir. 1956), followed in *American Cyanamid Corp. v. Lincoln Laboratories, Inc.*, 403 F.2d 486, 488 (7th Cir. 1968), and cited in *W. L. Gore & Associates, Inc. v. Carlisle Corp.*, *supra* at 617. *But see* 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure § 3928 (1977) (criticizing that view).

One case that has considered the question of reviewing an unfair competition claim in a § 1292(a)(4) appeal is *Saf-Gard Products, Inc. v. Service Parts, Inc.*, 532 F.2d 1266 (9th Cir.), *cert. denied*, 429 U.S. 896, 97 S.Ct. 258, 50 L.Ed.2d 179 (1976). There, the court of appeals affirmed the district court's findings of validity and infringement but declined to consider the unfair competition claims because they "may become moot by reason of the district court's determination as to damages for infringement in the accounting phase of the trial." *Id.* at 1273. Thus, the court in that instance apparently chose as a matter of discretion not to review the companion claim.

Our situation, however, is quite different. Because the patent is invalid, there will be no accounting procedure in the district court and thus at this point the patent case *is* concluded, absent a grant of certiorari by the Supreme Court. We perceive no reason, therefore, to remand the case to the district court for entry of a dispositive order on its docket and then require the plaintiff to take an appeal at that time. The contingency that existed in *Saf-Gard* is not present here, and we believe that sound judicial administration dictates that we reach the merits of the unfair competition claim at this point.

This result is in accord with the views of leading commentators who assert that although the scope of the appeal under § 1292(a)(4) should ordinarily be confined to the issues of validity and infringement, the court should entertain any other matter necessary for "reasons of efficient relations between the court of appeals and the district court." 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *supra* § 3928, at 132. That we have the power to do so is clear. As the authors of Moore's Federal Practice state:

> Once a timely appeal is taken from an order made appealable by statute, the power of a court of appeals should be plenary to the extent that it chooses to exercise it. A court should not close its eyes to what is plainly there. . . . [O]nce a case is lawfully before a court of appeals, it does not lack power to do what plainly ought to be done. 9 Moore's Federal Practice ¶ 110.25[1], at 273 (2d ed. 1975).

We conclude that because of the unique procedural posture in this case we should, and will, review the appeal from the partial summary judgment entered against the plaintiff on Count II of his complaint.

## THE UNFAIR COMPETITION CLAIMS

■ In Count II of its complaint, the plaintiffs alleged that the defendant improperly obtained trade secrets under the guise of negotiating for a license and used this information to produce its own mixer some years later; disparaged the products of plaintiffs' licensees; and illegally tied the sales of mixer barrels to those of the chassis. The district court considered these allegations to state a single claim sounding in the tort of unfair competition and granted the defendant's motion for summary judgment. The court read Pennsylvania law as limiting that cause of action to a defendant's competitors, and ruled the plaintiffs did not hold that status. Suspecting that the tort of stealing trade secrets might be conceptually different from that of unfair competition, the court nevertheless declined to consider the issue in view of the parties' failure to brief or argue it. *See* 444 F.Supp. at 1281–83.[9]

---

9. In a later suit filed by plaintiffs and The Travel Batcher Corp., the district court analyzed Pennsylvania law including the case of

*Van Products Co. v. General Welding and Fabricating Co.*, 419 Pa. 248, 213 A.2d 769 (1965), and concluded that conversion of trade secrets

The plaintiffs contend that the inclusion of the trade secrets claim in the summary judgment was error. They assert ownership of the trade secrets, disputing the defendant's contention that the owner was Travel Batcher Corporation, a company controlled by the plaintiffs. We agree that a factual dispute has been established and it cannot be resolved on motion for summary judgment.

Rule 56(c) of the Federal Rules of Civil Procedure provides, in part, that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The plaintiffs' affidavit demonstrates that the dispute over the ownership of these trade secrets is genuine. The only issue is whether plaintiffs' ownership, if established, would entitle them to maintain the claim for theft.

Unfair competition and regulation of trade secrets are matters of state law and for the reasons stated in the district court's opinion, 444 F.Supp. at 1281, we agree that Pennsylvania law controls the disposition of this claim. Pennsylvania seemingly would follow the Restatement of Torts in determining trade secrets issues. *See College Watercolor Group, Inc. v. William H. Newbauer, Inc.*, 468 Pa. 103, 112–14, 360 A.2d 200, 204–05 (1976); *Van Products Co. v. General Welding and Fabricating Co.*, 419 Pa. 248, 258, 213 A.2d 769, 775 (1965). Comment b of § 757 of the Restatement includes as a trade secret any compilation of information used in one's business that gives one an opportunity to obtain an advantage over competitors who do not know or use it—the information need not be patentable. Comment c of the same section states that one who has a trade secret may be harmed by its disclosure to others, as well as by the use of his secret in competition with him. A trade secret is vendible, and mere disclosure may reduce its value.

Restatement § 759 provides that one who for the purpose of advancing a rival business interest procures information—not limited to trade secrets—may be liable for the use of that information. In determining such liability, the courts pose the question of *how* the defendant obtained the information, rather than simply relying upon a breach of a confidential or special relationship. *See Smith v. Dravo Corp.*, 203 F.2d 369, 374 (7th Cir. 1953) (applying Pennsylvania law). Direct competition is not essential to tort liability since the opposing interests of persons in a bargaining situation, such as buyer and seller, are also rival interests. Restatement of Torts § 759, Comment d (1939). Thus, requiring the parties to be direct business competitors before recognizing a cause of action construes the Restatement too narrowly.

Given this background, we cannot say at this point that the plaintiffs' claim is meritless, and since their affidavits assert ownership, summary judgment should not have been awarded. We think a sufficiently protectible interest has been alleged that requires further examination on remand.

Accordingly, the judgment of the district court is reversed insofar as it found patent validity and infringement and as to that count, judgment will be entered for the defendant. The district court's order entering summary judgment on the unfair competition claim will be vacated and the matter remanded for further proceedings consistent with this opinion.

---

was not conceptually distinct from unfair competition and only competitors could recover.

*Sims v. Mack Trucks, Inc.*, 463 F.Supp. 1068 (E.D.Pa.1979).