**WESTCODE, INC., Plaintiff,**

v.

**DAIMLER CHRYSLER RAIL SYSTEMS (NORTH AMERICA) INC., f/k/a AEG Transportation Systems, Inc., Defendant.**

**No. CIV. A. 00–4928.**

United States District Court, E.D. Pennsylvania.

Nov. 22, 2000.

---

Patrick C. Campbell, Jr., Richard G. Phillips Associates, P.C., Philadelphia, PA, for Plaintiff.

M. Richard Dunlap, Andrew G. Kimball, Dickie McCamey & Chilcote PC, Pittsburgh, PA, for Defendant.

## MEMORANDUM AND ORDER

KATZ, Senior District Judge.

Plaintiff Westcode, Inc., brings a motion for a preliminary injunction in the above-captioned action. After a hearing on November 21, 2000, and upon consideration of the submissions of the parties, the court makes the following findings of fact and conclusions of law.

### I. Findings of Fact

At the heart of the parties' dispute is a project to refurbish and rehabilitate rail cars for the San Francisco Bay Area Rapid Transit District (BART). In April 1995, defendant Daimler Chrysler Rail Systems (North America), Inc. (Adtranz) won a contract to refurbish and rehabilitate over 400 of BART's rail cars. The total price of the Adtranz–BART contract was over $330 million dollars. Adtranz subcontracted the work on the heating, ventilation and air conditioning system, the door control system, and the pneumatic/suspension system to plaintiff Westcode. The subcontract between Westcode and Adtranz was for less than ten percent of the total BART contract, or approximately $33 million.

Adtranz and Westcode entered into a contract for the BART subcontract in January 1996. After the termination of the parties' contract, it appears that Adtranz reissued some of the materials produced by Westcode, including designs and drawings for component parts to be used in the BART rehabilitation project. Westcode's original drawings contained its trademark and a proprietary legend.[1] Westcode's name and trademark have been registered since 1983 and the company routinely affixes its name and mark to its products, plans, designs and works. Westcode's name, mark, and proprietary legend were omitted from the drawings reissued by Adtranz. Instead, the reissued drawings contained Adtranz' mark, copyright and proprietary legend. In addition, Adtranz has taken over production of the component parts originally designed by Westcode.

Westcode's contract with Adtranz contains several provisions that are pertinent to this action. Upon termination of the contract for any reason, Westcode is required, if directed to do so by Adtranz, to transfer title and deliver to the defendant "the completed or partially completed plans, drawings, information and other property which, if this Agreement had been completed, would have been required to be furnished to [Adtranz]." Def. Ex. 2 (Westcode–Adtranz Contract), § P8.07.D. According to the contract,

---

1. The proprietary legend stated:

 This drawing is the property of Westcode, Inc. who claims proprietary rights in the material disclosed. It is issued in confidence for engineering information only and may not be copied or used for the manufacture of anything shown without specific written permission from Westcode, Inc. Exception is made to the Bay Area Rapid Transit District solely for the purpose described in section P7.02.B.3 and P7.09.A of BART contract # 4IMF–110A.

 Edward J. Widdowson Statement, ¶ 69.

 BART Contract # 4IMF–110A is the contract between BART and Adtranz. Section P7.02.B.3 allows BART to use any Adtranz's or a subsupplier's documents "in whatever manner determined to be necessary by the District in order to procure materials as specified in Subarticle P7.02.B.1. above." Def. Ex. 1 (Contract No. 4IMF–110A), § P7.02.B.3. Section P7.02.B.1. covers duplicate materials. See id. § P7.02.B.1. Section 7.09A requires Adtranz to grant to BART a "royalty-free, nonexclusive, and irrevocable license ... to publish, translate, reproduce, deliver, perform, dispose of, and to authorize others to do so, all data submitted under this Contract." Id. § P7.09A.

all information, including drawings, specifications, microcomputer source code and other data, conceived, prepared or developed by [Westcode] in the performance of this Agreement, whether or not required to be furnished to [Adtranz], shall be the property of [Adtranz] or [BART] and may be used by the [Adtranz] or [BART] for maintenance, repair, refurbishment and procurement of spare parts for vehicles supplied under this Agreement.

*Id.* § P4.07.A. Under a provision entitled "copyright," the contract requires Westcode to grant to Adtranz and BART a "royalty-free, nonexclusive and irrevocable license . . . to publish, translate, reproduce, deliver, perform, dispose of, and to authorize others to do so, all data submitted under this Agreement." *Id.* § P7.09.A. Should Adtranz or BART choose "to produce or manufacture equipment or material covered by patents and copyrights held by [Westcode]" then the contract requires Westcode to license the patents and copyrights to Adtranz or BART subject to certain royalty rates. *Id.* § P7.02.B.4.

While sections P4.07.A, pertaining to ownership, and P7.09.A, pertaining to licensing, are limited by certain contractual protections for Westcode's confidential or propriety information, the contract is extremely restrictive in defining confidential or propriety information. Under section P4.06.B.3, the plaintiff may only designate as confidential or proprietary information that is "associated with no more than eight (8) percent of the total work product" of the contract. *Id.* § P4.06.B.3. Moreover, the contract states that "design elements conceived, prepared, or developed in connection with this Agreement shall not be deemed confidential or propriety." *Id.* The contract also provides limited protec-

tion to "confidential know-how and/or trade secrets" that are not part of the information designated as confidential or proprietary under the eight percent provision of section P4.06.B.3. *Id.* § P4.06.B. While Adtranz retains "the irrevocable and non-exclusive right" to use the Westcode's confidential know-how or trade secrets to maintain, repair and refurbish equipment supplied under the agreement and to procure spare parts, Adtranz may not disclose information designated by Westcode as confidential know-how or trade secrets to a third party without the plaintiff's permission. *See id.* The contract again excludes from this second tier of protection any information "which was conceived, prepared or developed by [Westcode] in connection with this Agreement." *Id.* § P4.06.B.1.d.[2] In sum, under the terms of the contract between the parties, information that was conceived, prepared or developed by Westcode in connection with the subcontract is the property of Adtranz, *see id.* § P4.07.A., and cannot be designated by Westcode as confidential or proprietary, *see id.* § P4.06.B.3, or as confidential know-how or a trade secret, *see id.* § P4.06.B.1.d.

The contract provides for the placement of a proprietary notice on information that is designated confidential or proprietary under the eight percent provision. *See id.* § P4.06.B.5. A copy of a proprietary notice also appears in section P7.09.A.[3] The text preceding this copy of the notice does not address the notice directly, but rather, as noted, requires Westcode to provide Adtranz or BART with a royalty-free, nonexclusive, and irrevocable license. *See id.,* § P.7.09A. Section P7.09.A. is subject to the limitations of section P.4.06 covering confidential information. *See id.* § P.7.09.A.

---

**2.** Also excluded from designation as confidential know-how or trade secrets is information "developed by and in possession of [Adtranz] prior to first receipt" from Westcode; information that is or becomes generally known through no fault of Adtranz; and information

furnished to Adtranz by a third party without restriction. *See* Def. Ex. 2 §§ P4.06B.1.a.-c.

**3.** The text of this notice is substantially similar to the proprietary notice reproduced in footnote 1.

BART serves approximately 330,000 passengers per weekday. That number is expected to rise by an additional 50,000 passengers per weekday day when BART opens a new line to the San Francisco Airport in 2002. According to James R. LaGuardia, a BART principal rail vehicle engineer, if the injunction is issued, it will be impossible to complete work by the current deadline of 2002 on the approximately 294 cars that have not yet been rehabilitated. *See* LaGuardia Statement at 6. The cars slated to be rehabilitated have already been in service longer than their expected useful lives and if the project falls behind schedule, Mr. LaGuardia anticipates that "many additional cars will be unavailable for service because more and more unscheduled maintenance will be necessary on the oldest cars," resulting in delays and overcrowding for users of the BART system. *Id.* at 6. This situation will be exacerbated when the new line opens in 2002 and the ridership increases. *See id.*

Westcode's complaint against Adtranz alleges breach of contract, reverse passing off, misappropriation of trade secrets, unjust enrichment, promissory estoppel, misrepresentation, and unfair competition.

## II. Conclusions of Law

In order to prevail on a motion for a preliminary injunction, the movant bears the burden of demonstrating (1) a likelihood of success on the merits and (2) a probability of irreparable harm if relief is not granted. *See Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 90–91 (3d Cir. 1992) (citation, punctuation omitted). A court should also consider (3) the effect of granting or denying relief on the non-moving party and other interested persons and (4) the public interest. *See id.; see also ECRI v. McGraw–Hill, Inc.*, 809 F.2d

223, 226 (3d Cir.1987). The request for an preliminary injunction should be granted only if all factors favor relief. *See Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990).

Of the claims upon which it bases its motion for preliminary injunction, Westcode argues that all four factors are satisfied only for its claims of reverse passing off and unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and its claim of misappropriation of trade secrets. *See* Pl. Mem. of Law in Supp. of Mot. for Prelim. Inj. at 19–20 (asserting that plaintiff will suffer irreparable harm only for its reverse passing off, unfair competition, and misappropriation claims). Thus, for the purposes of ruling on the plaintiff's motion, the court will evaluate the preliminary injunction factors as to these claims only.

### A. Likelihood of Success on the Merits

■■■ Westcode has not demonstrated a likelihood of success on the merits of its reverse passing off and misappropriation of trade secrets because it has not shown that these claims are not foreclosed by its contract with Adtranz. Passing off occurs when " 'A' sells its products under 'B's' name" and reverse passing off occurs when " 'A' sells 'B's' product under 'A's' name." *Attia v. Society of the N.Y. Hosp.*, 201 F.3d 50, 59 (2d Cir.1999). Both have been held to be a violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[4] *See id.* "A claim of passing off generally focuses on the likelihood of the customer's confusion and involves a comparison between the two products." *See American Telephone and Telegraph Company v. Winback and Conserve Program*, 42 F.3d 1421, 1428 n. 9 (3d Cir.1994). Liability for

---

**4.** That section provides, in relevant part:

Any person who, on or in connection with any goods or services ... uses in commerce ... any false designation of origin ... which ... is likely to cause confusion, or to cause mistake, or to deceive as to ... the

origin ... of his or her goods, services, or commercial activities ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).

misappropriation of a trade secret is established either when the secret has been discovered by improper means or the disclosure or use of the trade secret constitutes a breach of confidence. *See College Watercolor Group, Inc. v. William H. Newbauer, Inc.*, 468 Pa. 103, 360 A.2d 200, 204–05 (1976).

 Westcode argues that it is likely to prevail because it meets the elements of reverse passing off and misappropriation of trade secrets. In discounting the contract, Westcode relies on the proprietary legend affixed to its drawings that forbids the manufacture of products from those drawings. It argues that its legend, which reserves its manufacturing rights, was allowed by sections P.4.06.B.5 and P.7.09. It also takes the position that the contract only allows Adtranz to use the design drawings for maintenance, repair, refurbishment and spare parts, rather than to manufacture the original Westcode-designed products. It does not, however, argue that any material covered by the eight percent confidential or proprietary provision of section P4.06.B.3 has been used improperly by Adtranz. Alternatively, Westcode argues that even if the contract does allow Adtranz to originally manufacture the products, Adtranz breached the contract and may not rely on its provisions. In contrast, Adtranz argues that this is essentially a breach of contract action in which Westcode was in breach and that the plaintiff is unable to prevail on its claims because the contract between the parties allows Adtranz to use the materials at issue in the manner that it did.

At this early juncture, Westcode has not demonstrated that the contract provisions do not foreclose its reverse passing off and misappropriation of trade secrets claims.

While it is difficult to predict the likelihood of success on the issue of which party breached the agreement, the court's sense is that Westcode's recovery, if any, will probably be on a *quantum meruit* basis, given its burden of proof and the limited record to date.[5] On the present record, Westcode has not demonstrated that the proprietary legend affixed to its drawings should trump the provisions of the contract. The legend allowed under section P4.06.B.5 is limited to the information that is part of the eight percent designated confidential or proprietary information. To the extent that section 7.09A allows a proprietary legend, that section is also subject to the limitations of section P4.06, which precludes designation of any information as confidential, proprietary, confidential know-how, or a trade secret that was conceived, prepared, or developed in connection with the subcontract. While Westcode argues that much of its designs pre-existed the contract and therefore would not be restricted by section P.4.06, the record before the court at this time is not sufficiently developed to make a finding on this issue. While the court recognizes that there is a serious question regarding whether Westcode contracted away its manufacturing rights for original component parts, the record is also not sufficiently developed on this point such that Westcode has demonstrated a likelihood of success on the merits.[6] Thus, Westcode's ownership of the information it alleges Adtranz is reverse passing off is sufficiently in dispute such that Westcode has failed to meet its burden of demonstrating a likelihood of success on the merits on that claim. Similarly, at this stage in the proceedings, the question of whether the materials are, in fact, trade secrets that were improperly acquired or used in

5. The events surrounding the termination of the contract are disputed by the parties and the court does not resolve them at this time. Adtranz brought a state court action against Westcode alleging breach of contract in January of this year. That action is still pending.

6. At the hearing, Adtranz argued that Defendant's Exhibit 15 constituted an agreement between Westcode and Adtranz for Westcode's original manufacturing rights. The court directs the parties to complete discovery on this issue prior to the pretrial conference on December 20, 2000.

breach of confidence is sufficiently in dispute such that Westcode has failed to demonstrate a likelihood of success on that claim.

■ Finally, Westcode has failed to show likelihood of success on the merits of its unfair competition claim. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), also provides protection against the unauthorized use of both registered and unregistered marks, under the theory that an infringer has engaged in unfair competition by falsely representing the origin of goods or services by a mark confusingly similar to one already in use. *See Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 469 n. 2, 473 (3d Cir.1994). "Likelihood of confusion is . . . the test for actions brought under section 43(a) of the Lanham Act," for unfair competition due to the use of a valid trademark. *Id.* at 473. While Westcode asserts that Adtranz has removed the Westcode trademark from materials it alleges to be proprietary, it does not allege, nor has it submitted any evidence, that Adtranz is actually using either the Westcode trademark or one that is confusingly similar. Thus, it has not demonstrated a likelihood of success on this claim.

### B. Irreparable Harm

■ Considered independently of Adtranz's contractual defenses, Westcode's Lanham Act claims and its trade secret claims would likely result in irreparable injury. "Grounds for finding irreparable injury include loss of control of reputation, loss of trade, . . . loss of good will," and likelihood of confusion. *Opticians Ass'n*, 920 F.2d at 195–96. Likelihood of confusion is an element of both reverse passing off, *see Winback*, 42 F.3d at 1428 n. 9, and unfair competition, *see Fisons Horticulture*, 30 F.3d at 473, and were Westcode to prevail on these claims, irreparable injury would be presumed. Similarly, an intention to make imminent or continued use of a trade secret will almost certainly result in irreparable harm, *see Campbell Soup*,

977 F.2d at 92, and were Westcode to prevail on this claim, it would likely suffer irreparable injury. On the other hand, if this action is, as defendant contends, simply a dispute about money owed under the contract, then plaintiff has an adequate remedy at law. Because Westcode has not demonstrated a likelihood of success on the merits at this juncture, it has not demonstrated that it will suffer irreparable injury. *See Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 489 (8th Cir.1993) (holding, in action for false advertising under the Lanham Act, that presumption of irreparable injury does not apply where the district court found plaintiff did not demonstrate a likelihood of success on the merits).

### C. Harm to Others and the Public Interest

■ The effect of granting the preliminary injunction on other interested persons, as well as the on public interest, weigh in favor of denial of the plaintiff's motion. Granting the injunction will cause a serious delay in BART's $330 million rehabilitation project resulting in overcrowding and delays in service for the 300,000 daily users of the BART system and cause additional strain on the system when the new line to the airport opens in 2002. Given the serious effect of the injunction, the court concludes that granting it would harm both the interest of BART and the public in general.

### III. Conclusion

Westcode has failed to meet its burden of proof on its claims such that a preliminary injunction is warranted. Specifically, Westcode has not demonstrated a likelihood of success on the merits or irreparable injury. Additionally, the effect of the injunction on other interested parties, as well as the public interest, weighs against its issuance.

An appropriate order follows.

## ORDER

**AND NOW,** this day of November, 2000, upon consideration of the plaintiff's Motion for Preliminary Injunction (doc. 4), the submission of the parties and after a hearing, it is **ORDERED** that the motion is **DENIED.**