PSM4-045                                                          **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 12-3742 & 14-3255
_____

KENSET CORPORATION

v.

HRATCH Z. ILANJIAN,
                                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:11-cv-02464)
District Judge:  Honorable Legrome D. Davis
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 21, 2015
Before:  FISHER, KRAUSE and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: January 28, 2015)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Operating out of an apartment in Secane, Pennsylvania, Hratch Ilanjian convinced Vicken Setrakian, the president of Kenset Corporation ("Kenset"), that he was an international businessman who could help Kenset turn around its party-supply business in the Middle East. Over a course of months, Setrakian and Ilanjian exchanged e-mails regarding Ilanjian's credentials and about Kenset and its possible need for new business strategies. On Ilanjian's repeated requests, Setrakian provided Ilanjian with confidential business information. Ultimately, Setrakian decided to retain Ilanjian's services, and the two men exchanged additional e-mails and communicated via Skype to work out the details of their arrangement and to plan a meeting in Geneva, Switzerland.

The meeting never happened. Setrakian sent Ilanjian $20,000, after he requested it to cover expenses and arrangements before the trip to Geneva, but Setrakian continued to seek clarification of the fees (potentially 700,000 Swiss francs and $70,000 United States dollars per year for three years) for Ilanjian's global infrastructure expenses and business turnaround services. Subseqently, Ilanjian insisted that an agreement had been reached[1] while Setrakian expressed reservations about the arrangement and sought additional

---

[1] Ilanjian subsequently relied on some of the e-mails the men had exchanged. Ilanjian sent Setrakian what he termed a proposal, which he said would be final on Setrakian's signature. Setrakian responded that he agreed with all terms but the payment term (he asked for additional discussion and understanding of the 700,000 Swiss francs). A subsequent e-mail from Setrakian refers to a phone call and thanks Ilanjian for understanding his inability to fund 700,000 Swiss francs in one payment and accepting two payments. Setrakian then stated that he would start making arrangements the next morning (although he also wrote that he looked forward to receiving confirmation of their plans and mentioned their meeting in Geneva and a planned phone call).

information. Ultimately, Ilanjian asserted that he had been appointed Interim Chairman and CEO of Kenset in charge of a corporate turnaround by virtue of an agreement with Setrakian and that Setrakian had breached the agreement. He demanded full and immediate payment under the terms of the agreement as he understood them, namely $210,000 in United States currency and 2,100,000 Swiss francs, plus a payment of 1,700,000 Swiss francs for consulting services that he had previously stated would be provided without charge. Ilanjian also threatened unspecified serious consequences for non-payment and alleged that Setrakian was cheating one of its major business partners, financial and other institutions, and the government of the United Arab Emirates. Ilanjian later repeated his demand for immediate payment.

Kenset sued Ilanjian for fraud, misappropriation of trade secrets, conversion, trespass to chattels, procuring information by improper means, replevin, and interference with economic advantage. Kenset sought the immediate return of all its confidential information; an injunction to prevent Ilanjian from disclosing or using any of its confidential information; a declaration that no contract was formed; damages; and attorney's fees. With his answer (that included allegations that Setrakian was persecuting him and wanted to silence and kill him), Ilanjian filed a counterclaim for breach of contract.

During the course of the District Court proceedings,[2] Kenset sought discovery from Ilanjian with little success. Subsequently, Kenset sought sanctions against Ilanjian pursuant to Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure. The requested sanctions included dismissal of the counterclaim and the entry of a default judgment in its favor. Kenset also sought summary judgment against Ilanjian.

The District Court denied in part and granted in part Kenset's motion to impose sanctions for discovery violations, ruling that that certain facts, which Ilanjian had refused to address, would be deemed established. The District Court also granted summary judgment as to Kenset's claims of misappropriation of trade secrets and procuring confidential business information. The District Court ordered Ilanjian to return specified confidential documents that had been provided to him by Setrakian and enjoined him from disclosing, using, or referring to those documents. In light of its ruling, the District Court did not consider Kenset's claims of trespass to chattel, replevin, and conversion (and Kenset later withdrew those claims). The District Court also granted Kenset's motion for summary for judgment on Ilanjian's counterclaim for breach of contract, concluding that no contract had been formed (in the absence of sufficiently definite terms), but, even if it had, the contract was the product of fraudulent inducement and Ilanjian had not mitigated his damages.

---

[2] As we write primarily for the parties, we will discuss the facts only insomuch as they are relevant to our analysis.

Ilanjian filed a timely notice of appeal (opening C.A. No. 12-3742). Kenset filed a motion to seal the record, which was provisionally granted, pending our review of it at this stage (Kenset also submits a motion to continue the seal). Ilajian opposes the efforts to maintain the seal and presents a motion to unseal the record. He has filed several other motions during the pendency of his case, some of which we have already ruled on. One of his motions evidenced an intention to appeal the District Court's subsequent order granting attorney's fees to Kenset. We ruled that it should be considered as a notice of appeal, and, ultimately, another appeal was opened (C.A. No. 14-3255). The two cases, consolidated for disposition, are now fully briefed (although Kenset requests that Ilanjian's supplemental brief regarding C.A. No. 14-3255 be struck from the record because it goes outside the scope of the briefing instructions). Also, Ilanjian has submitted a motion for leave to file a supplemental appendix for C.A. 14-3255. Additionally pending are his motion for reconsideration of the Clerk's Order granting Kenset leave to file a supplemental appendix in C.A. No. 12-3742 and his motion "to impose severe sanctions, disbar permanently and imprison Kenset and Setrakian lawyers."

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the imposition of sanctions for a discovery violation for abuse of discretion. See Saldana v. Kmart Corp., 260 F.3d 228, 236 (3d Cir. 2001). We exercise plenary review over the District Court's grant of summary judgment in favor of the defendants. Abramson v. William Patterson

5

Coll., 260 F.3d 265, 276 (3d Cir. 2001).  While we also consider de novo the legal question whether the District Court applied the proper standards in making a fee determination, its related factual findings are reviewed only for clear error, and the reasonableness of an award of attorney's fees is reviewed for abuse of discretion.  See Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 177 (3d Cir. 2001).  We may affirm on any basis supported by the record.  See Erie Telecomms., Inc. v. City of Erie, 853 F.2d 1084, 1089 n.10 (3d Cir. 1988).  Upon review, we will affirm the District Court's judgment.[3]

First, the District Court did not abuse its discretion in deeming some facts admitted.  Despite Kenset's many efforts, it was unsuccessful in getting meaningful discovery from Ilanjian.  Ilanjian was generally uncooperative.  For instance, he ignored some requests and refused to answer others.  Ilanjian also failed to voluntarily appear for his deposition three times.  Ultimately, when his deposition was held in the federal courthouse under the supervision of the District Court, Ilanjian refused to answer many questions about his experience as a consultant and turnaround specialist, his past and present business activities, and the nature of the work he performed for Kenset.  To

---

[3] We construe Ilanjian's pro se brief liberally, although his arguments at times stray from matters relevant to the District Court's rulings.  We focus on what we perceive to be his main challenges (and the orders he identifies), the ultimate judgment in favor of Kenset, predicated in part on an adverse ruling in a discovery matter, and the fee award against him.  We also recognize that he maintains that the District Judge should have recused himself, but we conclude that his claims of bias, collusion, conspiracy, a criminal network behind Kenset's allegations and the District Court's rulings, and the like are

summarize the three-day deposition (continued at one point because Ilanjian stated that he felt unwell), he refused to answer many questions on relevance grounds, and when the District Court told him that he must answer the questions because they were relevant and proper, he said that he would take the Fifth (and did so repeatedly). He made similar objections to interrogatories despite instruction from the District Court about the scope of the Fifth Amendment and relevance. At one point, when the District Court instructed him to answer a question because it related to relevant information that was not protected or privileged, Ilanjian countered, "that's your opinion."

In considering the matter, the District Court undertook a comprehensive review of Ilanjian's participation (and lack thereof) in the discovery process. The District Court concluded that Ilanjian bore responsibility for an almost complete absence of meaningful discovery, reviewed the prejudice to Kenset, and considered its previous efforts to win compliance from Ilanjian and the potential effectiveness of other or lesser sanctions. At the end of its analysis, the District Court carefully ruled that certain facts, which Ilanjian had refused to address, would be deemed established. We see no abuse of discretion in the District Court's ruling.

We also conclude that the District Court did not err in granting summary judgment in favor of Kenset. To win an injunction for a misappropriation of a trade secret under the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), Kenset had to show (1) the

---

unfounded.

7

existence of a trade secret; (2) the communication of the trade secret pursuant to a confidential relationship; (3) the use or threatened use of the trade secret in violation of that confidence; and (4) harm. See 12 Pa. Cons. Stat. § 5303(a); Moore v. Kulicke & Soffa Indus., 318 F.3d 561, 566 (3d Cir. 2003); Den-Tal-Ez, Inc. v. Siemens Capital Corp., 566 A.2d 1214, 1232 (Pa. Super. Ct. 1989) (explaining that, for granting injunctive relief, the appropriately prospective inquiry asks "not whether defendant already has used or disclosed, but whether there is sufficient likelihood, or substantial threat, of defendant doing so in the future").

For the reasons given by the District Court, Kenset showed that it was entitled to the injunction it sought. To summarize (without repeating the District Court's thorough analysis), Kenset presented evidence (that Ilanjian did not controvert) to show that the materials at issues were trade secrets, see Den-Tal-Ez, 566 A.2d at 1230; that they were disclosed as part of a confidential relationship, see Smith v. Dravo Corp., 203 F.2d 369, 376 (7th Cir. 1953) (discussing Pennsylvania law); that Ilanjian procured the trade secrets by misrepresentation and threatened (for instance, via e-mail) to use those trade secrets in violation of the confidence between the parties; and that Kenset would suffer significant harm from their disclosure. We agree that the permanent injunction was warranted under the circumstances of this case.

We also agree with the District Court's analysis of the claim that Ilanjian procured information by improper means. Under Pennsylvania law, an action for such a

8

conversion of business information lies where another acquires confidential business information (trade secrets or other non-public information) through misconduct, which can include fraudulent misrepresentations. See Pierre & Carlo, Inc. v. Premier Salons, Inc., 713 F. Supp. 2d 471, 481-82 (E.D. Pa. 2010). As the District Court concluded, summary judgment was warranted given the evidence of the parties' relationship, vis-à-vis each other, see Sims v. Mack Truck Corp., 608 F.2d 87, 95 (3d Cir. 1979), and other evidence in the record, including Ilanjian's means of acquiring information from Setrakian, and his subsequent emails, that threatened, inter alia, disclosure of the information to a supplier with whom Kenset had a complicated business relationship.

Furthermore, the District Court properly granted summary judgment in favor of Kenset on Ilanjian's counterclaim for breach of contract. For the reasons given by the District Court, a review of the evidence leads to the conclusion that no contract formed because any agreement between Ilanjian and Setrakian was not sufficiently definite. See Johnston the Florist, Inc. v. TEDCO Constr. Corp., 657 A.2d 511, 516 (Pa. Super. Ct. 1995) (en banc) (setting forth the elements of contract law in Pennsylvania and explaining how the existence of a contract is proved); Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 582 (3d Cir. 2009) (describing how to determine parties' intent to be bound and distinguishing between preliminary negotiations that do not constitute a contract from those negotiations that are binding even in the absence of a written agreement).

9

Even if Ilanjian and Setrakian came to some sort of conclusion about the payment term (or if there was a genuine issue of material fact about that), so many other terms of the contract remained indefinite. As the District Court summed it up, it was unclear what consideration Setrakian would be given for the compensation offered. The District Court did not err in rejecting the possibility of partial performance in light of Setrakian's transmittal of $20,000 to Ilanjian. In light of the evidence, that money was separate from the agreement and related to Ilanjian's requests for money for expenses (including the possible refurbishment of his "Geneva offices") in advance of the planned meeting to finalize their agreement in Switzerland.[4]

Furthermore, even if the parties had reached an agreement, Kenset could rescind or avoid it because it had been fraudulently induced. See In re Allegheny Int'l, Inc., 954 F.2d 167, 178-79 (3d Cir. 1992) (providing an overview of fraudulent inducement under Pennsylvania law). As the District Court determined, with the requisite knowledge and intent, Ilanjian made many material misrepresentations, on which, under the circumstances, Setrakian reasonably relied. Also, as the District Court concluded based on evidence in the record, including the facts deemed admitted, Ilanjian had failed to make any efforts to mitigate damages. See Prusky v. ReliaStar Life Ins. Co., 532 F.3d 252, 257-58 (3d Cir. 2008) (discussing the obligation to mitigate).

---

[4] In light of the misrepresentations, we conclude, for the reasons given by the District Court, that Kenset is entitled to a return of the $20,000.

For these reasons, and for the reasons provided by the District Court, the District

Court properly granted summary judgment in favor of Kenset. As we noted, Ilanjian also

challenges the award of attorney's fees and nontaxable costs to Kenset. He presents

various general objections to the award now.[5] However, he did not raise substantive

objections to the requested fee award in the District Court, despite being given repeated

opportunities to do so.[6] We will not consider his arguments for the first time on appeal.

See Huck ex rel. Sea Air Shuttle Corp. v. Dawson, 106 F.3d 45, 51 (3d Cir. 1997). (We

also will not consider any new evidence Ilanjian seeks to present for the first time on

appeal. See In re Application of Adan, 437 F.3d 381, 389 (3d Cir. 2006).) In any event,

his general arguments, that, for instance, the underlying action was "not complicated," or

his arguments relating to the merits of the case, are an insufficient basis for us to disturb

the fee award. We will affirm that order, too.

In addition to affirming the District Court's order and judgment, we grant –

in light of the sensitive and confidential information (including trade secrets) in the

documents filed in this appeal – Kenset's motion to seal the record on appeal, and to

---

[5] In his brief, he also repeats argument that he made in his initial brief. Although he seeks to raise issues that go beyond the fee matter, we do not strike the brief, as Kenset requests. We do again reject, however, Ilanjian's repeated claims of bias, fabrication, conspiracy, and other misconduct by the District Judge, whom Ilanjian inappropriately maligns.

[6] He asserts that he did, indeed, challenge the request for a fee award in the District Court. We are not saying that he filed nothing; his filings in the District Court and on appeal have been voluminous. However, in his filings, we do not see anything equivalent to a substantive challenge to the fee award.

11

continue the provisional seal imposed at the outset of this action.  See generally Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3d Cir. 1994).  We deny Ilanjian's motion to unseal.  We grant his motion to file a supplemental appendix.  Also, we deny Ilanjian's motion for reconsideration of the order permitting Kenset to file its supplemental appendix, and we deny his motion for severe sanctions against, and disbarment and imprisonment of, Kenset's counsel.