360 A.2d 200

COLLEGE WATERCOLOR GROUP, INC.

v.

WILLIAM H. NEWBAUER, INCORPORATED, and
William H. Newbauer, Appellants
(two cases).

COLLEGE WATERCOLOR GROUP, INC.,
Appellant,

v.

WILLIAM H. NEWBAUER, INCORPORATED
and William H. Newbauer.

Supreme Court of Pennsylvania.

Argued Nov. 26, 1974.

Decided July 6, 1976.

Rehearing Denied Aug. 5, 1976.

David Freeman, Philadelphia, for appellants in Nos. 281 and 546 and appellees in No. 296.

John F. A. Earley, Jr., Edward Fackenthal, Norristown, for appellant in No. 296 and appellee in Nos. 281 and 546.

Before JONES, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

MANDERINO, Justice.

There are three appeals before us which arose out of an equity action brought against William H. Newbauer, Incorporated (Newbauer, Inc.) and its president and sole shareholder, William H. Newbauer (Newbauer) by College Watercolor Group, Inc. (Watercolor, Inc). In one of the appeals, No. 281 January Term, 1974, Newbauer, Inc., and Newbauer appeal from the order of the trial court which (1) enjoined Newbauer, Inc., and Newbauer from utilizing appellee's trade secrets involving water color reproductions, (2) awarded damages to Watercolor, Inc., because its trademark had been improperly used, (3) ordered Newbauer, Inc., and Newbauer to pay to Watercolor, Inc., monies due as the result of the sale of watercolor products, and (4) rescinded a contract for the sale by Watercolor, Inc., of original watercolors to Newbauer. In the second appeal at No. 546 January Term, 1974, Newbauer, Inc., and Newbauer appeal from an order dissolving a preliminary injunction bond filed by Watercolor, Inc., when the trial court issued a preliminary injunction which was later modified. In the third appeal, No. 296 January Term, 1974, Watercolor, Inc., appeals from the trial court's order modifying its earlier order holding Newbauer, Inc., and Newbauer in contempt for violating a preliminary injunction.

## APPEAL OF WILLIAM H. NEWBAUER, INCORPO-RATED AND WILLIAM H. NEWBAUER AT NO. 281 JANUARY TERM, 1974

After concluding that appellants had discovered the appellee's trade secrets through the use of misrepresentations and had used them in breach of confidence, the trial court issued a permanent injunction restraining appellants from:

> "selling, displaying or giving away for promotional purposes, any watercolors, watercolor originals, copies, prints or other reproductions in any form belonging to or provided by plaintiff, or copies from or otherwise taken from any materials owned or supplied to defendants by plaintiff, or any such materials manufactured or processed by said defendants, or either of them directly or indirectly, by methods heretofore devised by said defendants, said methods having utilized trade secrets improperly obtained from the plaintiff, and said defendants are hereby permanently enjoined from infringing upon plaintiff's registered trademark 'Gray's'."

The trial court further held that appellants had improperly used the appellee's trademark and held appellants jointly and severally liable for $4,950 in compensatory damages and $5,000 in punitive damages. It also held appellants jointly and severally liable to the appellee for the sum of $36,040 owed to appellee as a result of sales of appellee's product through appellant Newbauer, Inc. Finally, the court rescinded a contract between appellant Newbauer and the appellee for the purchase of certain watercolor originals, provided the appellee returned the purchase price.

The appellee, Watercolor, Inc., is in the business of preparing and reproducing original watercolor paintings. It markets these reproductions, primarily to banks and other financial institutions for use in promotional cam-

paigns designed to encourage deposits. Since 1968, the appellee has been marketing these reproductions under the properly registered trademark "Gray's" Watercolors.

In October, 1971, appellant Newbauer, met the appellee's president, Paul D. McConaughy, at a banking convention. This meeting led to an arrangement whereby appellant, Newbauer, Inc., was to sell the appellee's reproductions in a five-state area. The agreement called for Newbauer, Inc., to receive a commission for each reproduction and frame sold through its efforts. The billing of financial institutions was to be done by Newbauer, Inc., and the proceeds were to be turned over to the appellee.

Throughout the life of the agreement, appellant, Newbauer, acting for his corporation, Newbauer, Inc., conducted a vigorous campaign on behalf of appellee's product. During the latter part of 1971 and the first quarter of 1972, he succeeded in generating a large volume of sales of promotional campaigns to financial institutions. At certain times, the appellee was unable to produce enough reproductions to meet the demand generated by the sales campaign. In late February, 1972, Newbauer brought his financial advisor, Thomas Kelly, to appellee's plant in order to evaluate the efficiency of the production methods and to suggest improvements. At this time certain of the confidential techniques utilized by the appellee were disclosed to both Newbauer and Kelly. Kelly later made a second visit to appellee's plant in the company of Frederick Dello, an artist.

Shortly thereafter, Newbauer asked Dello to devise a method for reproducing watercolor paintings and in March, 1972, Dello became an employee of Newbauer, Inc. At approximately the same time Kelly was commissioned by Newbauer to develop a process for the mass production of watercolors. In mid April, 1972, Newbauer and Dello visited the home and studio of Ernest Walden, appellee's artist. At that time they both saw

the appellee's process in the studio. A few days later, Newbauer asked Walden to leave appellee's employ and come to work for him, but Walden refused. Newbauer also asked one of his own employees to spy on the appellee, but the spying was never carried out.

Newbauer also entered into a personal contract to purchase sixty-three (63) original watercolor paintings from the appellee. At the time this contract was made, Newbauer told appellee's president, Paul D. McConaughy, that he wanted the paintings for his own private satisfaction and for tax purposes. The parties agreed that delivery would not be made until the "programs" for which the paintings were done had been completed. Prior to the completion of the "programs" Newbauer appeared at the appellee's studio, knowing McConaughy would be away visiting the Bank of Delaware because of certain complaints from that customer. Newbauer told the chief supervisor that he needed the original paintings in order to compare them to the copies because of complaints from the Bank of Delaware. He took fifty-four (54) originals which he then used to reproduce copies. These copies were passed off as the appellee's product, including the use of the trademark "Gray's."

During the life of the agreement appellant Newbauer became a minor shareholder in the appellee corporation. Subsequently, he expressed an interest in increasing his holding and insisted that appellee's president sell him a controlling interest in the corporation. Unless McConaughy assented, Newbauer threatened to have Newbauer, Inc., refuse to pay appellee $36,000 that was owing to it from sales of promotional campaigns. The parties have stipulated that this money is owed by appellant, Newbauer, Inc., to the appellee, Watercolor, Inc.

Appellants first contend that they were denied due process because appellant Newbauer was not present at an in camera hearing during which testimony was

taken describing the appellee's secret process. Appellants' attorney, however, was present at all times. This procedure was not objected to at trial and was, in fact, agreed upon by the parties. Consequently, appellants have waived any objections to the in camera procedure by failing to raise them at trial. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

■■ Appellants next contend that because all of the witnesses who testified concerning the uniqueness of appellee's process had some interest in the appellee corporation, their testimony, absent corroboration from an independent source, is insufficient to establish a trade secret. A witness, however, who has an interest in the proceedings is not incompetent to testify. Act of May 23, 1887, P.L. 158, § 4, 28 P.S. § 314; *Anderson v. Pittsburgh Railways Co.*, 423 Pa. 550, 225 A.2d 548 (1967). A witness's interest may be considered when judging his credibility but that interest does not render one incompetent to testify. The appellee's witnesses testified to all the elements of a trade secret as set forth in *Van Products Co. v. General Welding and Fabricating Co.*, 419 Pa. 248, 213 A.2d 769 (1965), and that testimony properly supports the trial court's conclusion that the appellee possessed a trade secret.

■ Appellants next contend that even if the appellee did possess trade secrets, it is not entitled to legal protection because the appellee failed to properly guard the secret against disclosure. In *Van Products*, supra, the Court held that before one is entitled to claim legal protection for a trade secret it must in fact be maintained as a secret. Appellants argue that the appellee's willing disclosure of the trade secrets to appellant Newbauer, Inc., a competitor, destroys its claim for legal protection. The parties, however, cannot be classified as competitors. At the time that Newbauer and Kelly gained access to the secret process, the parties were cooperating in a mu-

tually beneficial arrangement. Under that arrangement, Newbauer, Inc., was to market the appellee's reproductions in a five state area. Appellants' marketing endeavors were very successful and production was not meeting demand. It was at this point that Newbauer introduced Kelly to the appellee's president, McConaughy, stating that Kelly might suggest methods of speeding up production upon reviewing the production process. It was for this reason that Newbauer and Kelly were able to gain access to the secret process. We do not have here the type of widespread disclosure found fatal in *Van Products,* supra, where the trade secret had been published in a patent application and was widely described in trade literature.

Appellants further content that, even if the appellee's disclosure to Newbauer and Kelly did not destroy its right to protection, they should not be enjoined from using it because there was no violation of a position of trust and confidence in obtaining the secret, nor was the secret discovered by improper means. The standard for determining whether one is liable for the use or disclosure of another's trade secret is set forth in the *Restatement, Torts,* § 757 (1939) and in *Van Products,* supra, 419 Pa. at 25, n. 3, 213 A.2d at 774, n. 3. Section 757 states:

> "One who discloses or uses another's trade secret, without privilege to do so, is liable to the other if
>
> (a) he discovered the secret by improper means, *or*
>
> (b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him, . . .." (Emphasis added.)

The trial court concluded that Newbauer violated § 757(a) because he obtained the secret by improper means and § 757(b) because use of the secret was a violation of Newbauer's position of trust and confidence. Since §§

757(a) and (b) state alternative grounds for liability, if the trial court is correct in either of its conclusions, appellants were properly held liable.

The trial court's conclusion that improper means were used to discover the secret is based on Newbauer's misrepresentations to gain access to the secret. Newbauer told McConaughy that Kelly was brought to the plant to evaluate the production process in order to speed up production. The primary purpose for the visit, however, was for Kelly to obtain information so that Newbauer could produce his own reproductions using the appellee's process.

This conclusion is not only supported by the evidence; it is inescapable. In addition to the misrepresentation, Newbauer attempted to hire appellee's key personnel and to spy on the appellee's operations. While neither of these attempts bore fruit they tend to confirm the conclusion that Kelly's trip to the plant was for the primary purpose of gathering information. Furthermore, appellants' reproduction of watercolor paintings within six (6) to eight (8) weeks after the visit confirms the information gathering purpose of the visit.

Appellants make the startling argument that this conduct should not be considered improper in light of allegedly existing standards of the business community. *Comment f* to § 757 summarizes the standard of conduct which is improper as "those means which fall below the generally accepted standards of commercial morality and reasonable conduct." *Comment f* specifically cites fraudulent misrepresentations to induce disclosures and espionage as improper means. Ours is a competitive business system in which it is only natural for one businessman to observe and discover what the competition is doing. This Court, however, will not put a stamp of approval on the use of misrepresentations and espionage as means that fall within the "generally accepted standards of

commercial morality and reasonable conduct." Having found a clear violation of Section 757(a), we need not consider whether there was also a violation of Section 757(b).

In light of the above, we see no reason to vacate the injunction issued against appellants enjoining them from using any of appellee's trade secrets.

The trial court also held appellants liable for infringement of appellee's trademark. Newbauer purchased sixty-three original watercolors from appellee. He told the appellee's president that he wanted these for tax purposes and for his own private satisfaction. It was agreed that delivery would not be made until the "programs" for which the paintings had been made had been completed. Prior to the completion of the "programs" Newbauer appeared at appellee's studio, knowing that its president would be visiting the Bank of Delaware. He spoke with the chief supervisor and told her that he needed the originals to compare to the copies because there had been complaints from the Bank of Delaware. He took fifty-four of the originals with him but never appeared at the Bank of Delaware. He used the originals to reproduce copies and then passed them off as appellee's product, including the use of the trademark "Gray's" watercolors. The trial court found this to be trademark infringement and held appellants jointly and severally liable for $4,950 in compensatory damages and $5,000 in punitive damages.

■ Appellants only claim, concerning this matter, is that the Pennsylvania courts lack jurisdiction in trademark actions. On the contrary, Pennsylvania courts do have jurisdiction of trademark actions. Title 28 U.S.C. § 1338(a) states:

"The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights

and *trade-marks.* Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases." (Emphasis added.)

Section 1338(a) plainly means that the district courts have exclusive jurisdiction in patent, plant variety protection, and copyright cases, but not in trademark cases.

The next issue is raised by appellant Newbauer. He contends that his contract with the appellee for the purchase of the sixty-three original watercolors should not have been rescinded. He argues that the contract resulted from an arms length transaction between businessmen and he, therefore, was under no duty to reveal his motives for wanting the paintings. We cannot agree. One may not, with impunity, induce another to contract by fraudulent misrepresentations.

> "Where a party is induced to enter into a transaction with another party that he was under no duty to enter into by means of the latter's fraud . . . the transaction is voidable as against the latter . . . ."

*Restatement, Contracts,* § 476 (1932); *De Joseph v. Zambelli,* 392 Pa. 24, 139 A.2d 644 (1956); *In Re Reichert's Estate,* 356 Pa. 269, 51 A.2d 615 (1947); 1 *Corbin on Contracts,* §§ 6, 146 (1963).

Statements of intention made at the time of contracting are not fraudulent if, when made, such statements represent a person's true state of mind, even though later one changes one's mind. *First National Bank v. Sagerson,* 283 Pa. 406, 129 A. 333 (1925). Statements of intention, however, which do not, when made, represent one's true state of mind are misrepresentations known to be such and are fraudulent. The *Restatement, Contracts,* § 471(a) defines fraud as a "misrepresentation known to be such, . . . ." Section 470(1) defines a misrepresentation as "an assertion not in accordance with the facts," and *comment b* to §

470 states that "any state of mind is a fact." *See* 37 Am.Jur.2d *Fraud and Deceit,* § 59 (1968). This knowing misrepresentation of one's intention or state of mind is a misrepresentation of an existing fact. *See Rose v. Rose,* 385 Pa. 427, 123 A.2d 693 (1956).

In the instant case, Newbauer induced the contract for the sale of the watercolor originals by stating that he wanted them for his own personal satisfaction and tax purposes. At the time that the contract was made Newbauer was busy setting up his own operation for reproducing watercolor paintings. Within one month of the making of the contract, Newbauer was using the paintings to make his own reproductions as part of his total scheme to interfere with the appellee's business operation. Finally, Newbauer surreptitiously obtained possession of the paintings prior to the date when he was supposed to receive possession. Under these circumstances, the conclusion is inescapable that Newbauer knowingly misrepresented his intention in order to induce appellee to sell him the paintings. Such fraud justifies the trial court's rescission of the contract.

Appellant Newbauer also contends that the trial court erred in holding him individually liable for some $36,-000.00 which admittedly was owing to appellee, Watercolor, Inc., from Newbauer, Inc., for sales made by Newbauer, Inc., of the appellee's product. In holding Newbauer jointly and severally liable with Newbauer, Inc., for the debt, the trial court concluded that the circumstances justified piercing the corporate veil. We agree.

The accepted rule in Pennsylvania is that a corporation is an entity distinct from its shareholders even if the stock is held entirely by one person. *Barium Steel Corp. v. Wiley,* 379 Pa. 38, 108 A.2d 336 (1954); *Wedner Unemployment Compensation Case,* 449 Pa. 460, 296 A.2d 792 (1972); *see also Zubic v. Zubic,* 384 F.2d 267 (3d Cir. 1967). The corporate entity, however, can

sometimes be justifiably pierced. *Sams v. Redevelopment Authority*, 431 Pa. 240, 244, 244 A.2d 779, 781 (1968); *Wedner*, supra, at 464, 296 A.2d at 794. It has been held that the corporate veil is properly pierced whenever one in control of a corporation uses that control or corporate assets to further one's own personal interests. *Walkovszky v. Carlton*, 18 N.Y.2d 414, 276 N.Y. S.2d 585, 223 N.E.2d 6 (1966); *Minton v. Cavaney*, 56 Cal.2d 576, 15 Cal.Rptr. 641, 364 P.2d 473 (1961). In such circumstances the shareholder, in effect, pierces the corporate veil by intermingling his personal interests with the corporation's interests.

In this case it is clear that Newbauer used his control of the corporation in an attempt to further his own personal interests. When he was attempting to gain control of the appellee corporation by increasing his stockholdings in that corporation, he threatened that Newbauer, Inc., would refuse to pay appellee the approximately $36,000.00 due unless the president of the appellee corporation agreed to sell him a controlling interest in the appellee corporation. This fact alone supports the conclusion that Newbauer did not keep his personal interests separate from the corporate interests. He used his total control over the corporation in an attempt to gain a personal benefit. Under these circumstances the trial court properly pierced the corporate veil and held Newbauer responsible for the debt of Newbauer, Inc.

APPEAL OF WILLIAM H. NEWBAUER, INCORPORATED AND WILLIAM H. NEWBAUER AT NO. 546 JANUARY TERM, 1974

In this appeal, as in the appeal at No. 281 January Term, 1974, the appellants are Newbauer, Inc., and Newbauer. The appeal is from an order of the trial court dissolving a $10,000.00 injunction bond filed by the appellee, Watercolor, Inc., when the court granted a pre-

liminary injunction against the appellants. After the issuance of the permanent injunction, appellee filed a petition requesting that the original injunction bond be dissolved because a permanent injunction "need not be supported by security." The trial court granted relief to the appellee stating that "the petition to dissolve the injunction bond is granted."

The appellants contend that the trial court erred in dissolving the preliminary injunction bond because the permanent injunction was not as broad as the preliminary injunction and appellants, therefore, may have an action for damages by reason of the granting of an overly broad preliminary injunction. *See Smyth v. Fidelity & Deposit Co. of Maryland,* 326 Pa. 391, 192 A. 640 (1937); *Azar v. Markle,* 311 Pa. 296, 166 A. 889 (1933). We agree.

Pa.R.C.P. Rule 1531(b) provides that before a preliminary injunction may be granted the plaintiff must file a bond or post a cash security. The bond or cash security is to be conditioned "that if the injunction is dissolved because improperly granted . . . the plaintiff shall pay to any person injured all damages sustained by reason of granting the injunction and all legally taxable costs and fees, . . . ." The preliminary injunction bond filed by the appellee did contain the condition required by Pa.R.C.P. Rule 1531(b). The purpose of that bond was to protect appellants in the event that the preliminary injunction was improperly granted and damages were sustained thereby. Since the permanent injunction issued was narrower than the preliminary injunction, the appellants may be able to prove damages in a proper proceeding. In that event, appellants are entitled to look to the bond for recovery. The trial court improperly dissolved the preliminary injunction bond. The order dissolving that bond must therefore be vacated and the bond remain in effect according to it original terms.

## APPEAL OF COLLEGE WATERCOLOR GROUP, INC., AT NO. 296 JANUARY TERM, 1974

In this appeal, appellant, Watercolor, Inc., contends that the trial court erred in modifying a contempt order entered against the appellees for violation of the preliminary injunction. During the time the preliminary injunction was in effect, appellees were held in contempt for violating that injunction and each appellee was ordered to pay a $1,000.00 fine to the appellant. Appellees within a week of the issuance of the contempt order filed exceptions in the trial court. After considering the exceptions, the trial court concluded that that portion of the preliminary injunction which appellees had violated had been improperly issued. The trial court, however, did not reverse the contempt order because it concluded that the appellees were bound to obey even an improperly issued preliminary injunction until successfully challenged and dissolved by court order. Although the trial court affirmed its contempt order, it did modify the fines ordering the appellees to each pay $100.00 to the court.

The only issue raised is whether the trial court had jurisdiction to entertain exceptions to its own order of contempt. Appellant, Watercolor, Inc., contends that a contempt order is a final order subject to appellate review and the trial court had no authority to consider the appellees' exceptions. There is no claim made by the appellant, Watercolor, Inc., that the trial court erred on the merits in concluding that the preliminary injunction violated by appellees was overly broad.

We agree with appellant, Watercolor, Inc., that a contempt order is final and appealable when it is entered. *In Re Bloom,* 423 Pa. 192, 223 A.2d 712 (1966); *Commonwealth v. Heston,* 292 Pa. 63, 140 A. 533 (1928). We cannot agree, however, that the trial court did not have the authority to reconsider and reverse and modify its original order. The principle of the finality of judg-

120

ments is one that should be well guarded by the courts. *In Re Estate of Riley,* 459 Pa. 431, 329 A.2d 511 (1974). Our Rules of Civil Procedure do, however, provide the opportunity for the trial court to reconsider a final order if a petition is filed before the time for appeal expires. Pa.R.C.P. Rule 1522. This rule, unlike the procedure for filing exceptions, does apply to final orders and we see no reason for it not to apply to contempt orders. The purpose of allowing appeals is to insure the just and comprehensive resolution of a given case and the trial court is to be commended for reconsidering the matter instead of insisting that it be raised by way of appeal. *See, In Re Estate of Riley,* supra.

The decree of court at No. 281 is affirmed. The order of court at No. 296 is affirmed. The order of court at No. 546 is vacated.

EAGEN, J., did not participate in the consideration or decision of this case.

JONES, C. J., concurs in the result.