J-A27004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ROXANNE STONE, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF JACQUELINE HILL, DECEASED | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : : : | |
| v. | : : | |
| | : : | No. 115 MDA 2023 |
| LYSTN, LLC, FOOD FOR LIFE TRUCKING AND LOGISTICS COMPANY, INTEGRATIVE GREEN SOLUTIONS, INCORPORATED, AND BIODYNAMIC FARMS, LLC | : : : : : | |

Appeal from the Order Entered December 12, 2022
In the Court of Common Pleas of Berks County Civil Division at No(s):
21-11790

| | | |
|---|---|---|
| ROXANNE STONE, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF JACQUELINE HILL, DECEASED | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : | |
| LYSTN, LLC, FOOD FOR LIFE TRUCKING AND LOGISTICS COMPANY, INTEGRATIVE GREEN SOLUTIONS, INCORPORATED, AND BIODYNAMIC FARMS, LLC | : : : : : : | No. 428 MDA 2023 |
| Appellants | : | |

Appeal from the Order Entered December 12, 2022
In the Court of Common Pleas of Berks County Civil Division at No(s):
21-11790

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY LAZARUS, P.J.:                           **FILED: JULY 1, 2025**

Roxanne Stone, individually and as executrix of the will of Jacqueline Hill, deceased (collectively, Appellants), appeals from the order, entered in the Court of Common Pleas of Berks County, granting a preliminary injunction in favor of Appellees Lystn, LLC (Lystn), Food for Life Trucking and Logistics Company (F4L), Integrative Green Solutions, Inc., and Biodynamic Farms, LLC (Biodynamic), (collectively, Appellees), and granting, in part, and denying, in part, the parties' competing post-verdict motions.[1]  After careful review, we affirm in part, reverse in part, and remand with instructions.

In 2009, the now-deceased Jacqueline Hill[2] co-founded Lystn, LLC (Lystn), a Delaware company that develops, formulates, manufactures, sells, and distributes fermented raw pet food—in particular, its proprietary pet food, ANSWERS™.  Stone and Hill developed unique processes for inoculation and natural preservation of Lystn's raw pet food products.  As the trial court noted, "Stone [and] Hill—both founding members, shareholders, executives, and/or employees of the Lystn Companies—developed processes for the natural preservation of the Lystn Companies' raw pet food products using whey fermentation as a means of competitive inhibition."  Trial Court Opinion,

_____

[1] Although Appellees filed a notice of appeal purporting to cross-appeal from the order disposing of post-verdict motions, they have failed to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal or a cross-appellate brief with this Court.  Thus, we will confine our issues to those properly raised and preserved by Appellants.

[2] Hill passed away in September 2022.  We refer to Stone and Hill by name prior to Hill's death and as Appellants after Hill's death.

10/12/23, at 3.[3]   F4L, IGSI, and Biodynamic (collectively, Lystn-affiliated companies), are all controlled by Lystn or under common control by Lystn.  In August 2009, Stone was hired as an independent consultant for Lystn, and then, later, became a Lystn employee.

In April 2010, Stone and Hill executed an LLC Operating Agreement (Agreement) for Lystn that designated "Class I Members" and "Class II Members."  *See* Complaint (21-11790), 7/21/21, at ¶¶ 11-12.  Class I members were permitted to make capital contributions "both in cash and in the form of an assignment of intellectual property, business and industry contacts, and goodwill," actively participate in the operation of the company's business, and receive compensation and benefits.  *Id.* at ¶ 12.  Class II members, on the other hand, were not entitled to make capital contributions other than in cash or participate actively in the operation of the company's business or receive compensation or benefits.  *Id.*  Under the Agreement, "all Members may, notwithstanding this [A]greement, engage in whatever activities they choose, provided the same are not competitive with [Lystn]."  *Id.* at ¶ 13.  Finally, under the Agreement, members were permitted to serve

---

[3] In particular, the "whey-fermentation process" included the introduction of a specific type of "good" bacteria that competed to proliferate and, ultimately, outpace "bad" pathogenic bacteria (i.e., salmonella and E. coli) commonly found in raw pet food.  Although fermentation had been in use for centuries as a means to preserve foods, the *whey* fermentation process was unique to the pet food industry at the time it was devised by Stone and Hill.

a "transfer notice" if they wished to resign and transfer their membership interest to another member. *Id.* at ¶ 72.

In February 2021, Stone and Hill gave a transfer notice to four other Lystn members and to Lystn's corporate counsel. *Id.* at ¶ 16. In the notice, Stone and Hill stated that they wanted to transfer their member interests in Lystn and resign as a managing member and employee, respectively. *Id.* at ¶ 17. Under the Agreement, once a transfer notice has been received, Lystn and the transfer-member "shall negotiate in good faith to determine the purchase price for the [transfer-member's] membership interest." Agreement, 4/12/10, at ¶ 7.7.1.[4] On March 1, 2021, Stone and Hill requested copies of the Lystn-affiliated companies' articles of incorporation, bylaws, operating agreements, shareholders' agreements, employment agreements, and documents reflecting the companies' capitalizations and ownership.

On March 5, 2021, invoking the "Buyout Provision" under the Agreement, the Lystn members voted for Lystn to exercise a purchase option for Hill's and Stone's membership interests. On April 26, 2021, Stone and Hill resigned from Lystn and all of its affiliated companies, while explicitly retaining their respective ownership interests in the companies. Stone and Hill publicly announced their resignation from Lystn on May 4, 2021.

_____

[4] In the Agreement, Stone and Hill were classified as Class I members with 22% and 12% ownership interest in Lystn, respectively. *See* Limited Liability Company Agreement, 4/12/10, at ¶ 3.2.

- 4 -

In May 2021, Stone and Hill were members of Appellant Initial, LLC (Initial), a direct competitor of Lystn, which operates under the name "Kure Pet Food" (Kure)."[5]  Initial is a collective of five Amish farmers—Steven Fisher, Jess Ervin King, David Esh, John King, and Samual Stoltzfus (collectively, Amish Farmers)— who each operate through their own companies, Ultra Design (Fisher), Rocky Ridge Goat Dairy (Jesse Ervin King), and Lykens Valley Creamery (Esh/John King/Stoltzfus).  The Amish Farmers were all former, long-time suppliers of the Lystn companies.  The Lystn companies alleged that Initial manufactured Kure's products using the same formulas and processes— involving proprietary and confidential business information—developed by Stone and Hill while they were working for Lystn.

In July 2021, Stone and Hill sued Appellees alleging, among other things, that Appellees breached their shareholder agreement by failing to purchase their respective membership interests under the Agreement's relevant buyout provisions and also seeking declaratory and injunctive relief based on their argument that any non-compete clause in the parties' employment agreement was not enforceable as a matter of law as applied to its members who were not employed by the LLC and did not participate in its management.[6]  On August 19, 2021, Lystn and the Lystn-affiliated companies

---

[5] Kure/Initial eventually created Solutions Pet Food Products (Solutions).

[6] In their later-filed petition for preliminary injunction, Appellants "request an injunction on the ground that the Non-Compete Provision in the Operating Agreement is inapplicable, unenforceable, or both."  Plaintiffs' Petition for Preliminary Injunction, 8/25/21, at 2.

filed a separate action at 21-12980 (Second Action) against Stone, Hill, and Initial. On the same date, Lystn filed a petition for special and injunctive relief seeking to enjoin Initial from manufacturing, distributing, and/or selling raw and/or fermented pet food products that competed with Lystn's products and also seeking to prohibit Stone and Hill from consulting with Initial or any other raw pet food company. The complaint in the Second Action alleged various statutory and common law claims arising from misappropriation of Lystn's trade secrets, tortious interference with contractual relations, and breaches of noncompete obligations arising from the formation of Kure while Stone and Hill were members, shareholders, and/or suppliers of Lystn.

On October 21, 2021, the trial court entered a preliminary injunction against Stone, Hill, and Initial, which they immediately appealed to this Court. *See Stone v. Lystn, LLC, et al.*, 1402 MDA 2021, 1403 MDA 2021, 1254 MDA 2021, & 1255 MDA 2021 (the Preliminary Injunction appeals). After the court entered the preliminary injunction against Stone and Hill, Appellees posted $500,000.00 in cash in lieu of an injunction bond.[7] *See* Pa.R.C.P. 1531(b).

Following trial, the jury returned a verdict on August 16, 2022, determining that Stone and Hill "intentionally interfered with Lystn's actual or prospective contractual relations with its employees, contractors, suppliers[,] and/or distributors," and assessed damages for Stone and Hills' conduct in the

---

[7] Our Court entered a stay of the preliminary injunction; following the vacation of that stay, the injunction became effective again on November 10, 2021.

amount of $1,900,000.00. *See* Verdict Slip, at 4. In particular, the jury found that Stone and Hill misappropriated Appellees' trade secreted formulas in violation of the Pennsylvania Uniform Trade Secret Act[8] (PUTSA) and that they had also breached covenants contained within their respective shareholder agreements with Appellees. However, the jury also found that the Lystn Companies breached their obligation to buy out Stone's and Hill's member interests and shares under the operating agreements. *Id.* at 5. As a result of the Lystn breach, the jury assessed damages in the amount of $719,000.00 (Stone) and $1,371,000.00 (Hill), for a total of $ 2,090,000.00. *Id.*

On August 22, 2022, Stone and Hill and Appellees timely filed post-trial motions. *See* Pa.R.C.P. 227.1(c)(1). In their motion, Stone and Hill argued that they were entitled to a judgment notwithstanding the verdict (JNOV) on their PUTSA, non-competition clause, and intentional interference with contractual relations claims, and that evidence on damages was insufficient as a matter of law and that Appellees are entitled to nominal damages, at best, on the PUTSA claim. Moreover, they claimed that they were entitled to have the verdict molded to include pre-judgment interest, at the legal rate of interest of 6% per year, from the point in time that Appellees' unlawfully withheld payment, as well as post-judgment interest. *See* 41 P.S. § 202. In total, Stone and Hill argued they were entitled to $178,068.00 ($61,258.80 for Stone and $116,809.20 for Hill) in pre-judgment interest. Stone and Hill claimed that they were entitled to a multiplier of 1.42 for one year and five

---

[8] *See* 12 Pa.C.S.A. §§ 5301, et seq.

months—representing the time period between April 4, 2021 (date Lystn Companies breached buyout after 30-day window to negotiate expired following March 5, 2021 exercise of purchase option) and September 4, 2022 (date of final judgment). In the alternative, Stone and Hill sought a new trial.

In their post-trial motion, Appellees sought entry of a permanent injunction based on the restrictions provided in the preliminary injunction due to the jury's finding that Stone and Hill misappropriated Lystn's pet food formulas. Appellees also sought an order refunding the $500,000.00 cash deposit it made in lieu of an injunction bond. Finally, Appellees moved for exemplary damages and attorneys' fees pursuant to PUTSA. **See** 12 Pa.C.S.A. § 5304 (court may award exemplary damages in amount not to exceed $600,000.00 (in amount not exceeding twice any award made under subsection (a)), "if malicious appropriation exists"); **id.** at § 5305 (court may award attorneys' fees, expenses, and costs to prevailing party "if willful and malicious appropriation exists"). In their post-trial motion, Appellees estimated they expended a total of $711,329.73 in legal fees and costs to pursue and defend the instant matter, "exclusive of any expert fees and representation unrelated to litigation [and] exclusive of time marked as courtesy." Appellees' Post-Trial Motion, 8/22/22, at ¶ 19.

On December 12, 2022, the trial court entered an order granting a permanent injunction against Appellants. On the following day, December 13,

2022, after hearing argument,[9] the trial court issued an order disposing of the parties' competing post-trial motions. The order granted and denied, in part, Appellees' motion by: denying Appellees' request to refund the $500,000.00 cash deposit in lieu of bond, without prejudice; awarding $300,000.00 in exemplary damages ($150,000.00 as to Stone/Hill and $150,000.00 as to Initial for Appellants' willful violations under PUTSA) to Appellees; awarding a total of $529,126.73 in attorneys' fees to Appellees; and molding the verdict to the correct total of $2,090,000.00.[10] In that same order, the court granted and denied, in part, Appellants' post-trial motion by: molding the verdict and awarding Appellants an additional $174,306.00[11] in mandatory pre-judgment interest. The court denied all other requests for post-trial relief, including: (1) Appellees' request for return of cash paid in lieu of an injunctive bond; and (2) Appellants' motions (a) for JNOV, (b) for a new trial, (c) to dissolve the preliminary injunction "and for Ancillary Relief," and (d) relief "pursuant to [the] Pennsylvania Constitution regarding the imposition of enhanced damages[.]" *Id.* at 4.[12]

---

[9] This order also states that it "contemporaneously entered a permanent injunction in Appellees' favor." Order, 12/13/22, at 1.

[10] The jury incorrectly calculated the total amount as $2,190.000.00. However, the court later corrected the total amount.

[11] Specifically, the court awarded an additional $59,964.60 to Stone and $114,341.40 to Hill in pre-judgment interest.

[12] On December 19, 2022, the trial court entered an amended order, the text of which is verbatim from its original December 13, 2022 order disposing of
*(Footnote Continued Next Page)*

_____

the parties' post-verdict motions.  The only difference between the two orders appears to be a correction regarding the amount of pre-judgment interest awarded to Hill ($114,341.40 versus $114,341**5**.40).  Thus, we treat that order as simply an action taken by the trial court "to . . . correct formal errors in papers relating to the matter[,]" which does not affect the instant appeal.  Pa.R.A.P. 1701(b)(1); ***Metropolitan Edison Co. v. Old Home Manor, Inc.***, 482 A.2d 1062, 1065 (Pa. Super. 1984).  ***See also Pellizzeri v. Bureau of Professional and Occupational Affairs***, 856 A.2d 297, 302 (Pa. Cmwlth. 2004) (examples of formal errors amenable to correction include technical, non-substantive amendments to order that have no effect on pending appeal and cannot prompt new appealable issue).

Then, on January 23, 2023, the court molded the verdict "in accordance and agreement with th[e trial c]ourt's amended [post-trial motion] order."  Order Molding the Verdict, 1/23/23, at 1.  ***See Fish v. Gosnell***, 463 A.2d 1042, 1052 (Pa. Super. 1983) (other specific examples of formal errors amenable to correction involve acts that do not require exercise of discretion, such as molding a verdict to reflect delay damages under Pa.R.C.P. 238, or incorporating pre-judgment statutory or contractual interest to the verdict under Pa.R.A.P. 1701).  The court molded verdict as follows:  (1) in the amount of $300,000.00 in favor of Lystn as against Initial; (2) in the amount of $300,000.00 in favor of Lystn as against Stone and Hill; (3) for legal fees in the amount of $526,126.73 in favor of Lystn as against Stone, Hill, and Initial; (4) in the amount of $1,900,000.00 in favor of Lystn as against Stone and Hill; (5) in the amount of $1,485,341.40 in favor of Hill as against Lystn; and (6) in the amount of $778,964.60 in favor of Stone as against Lystn.  ***See*** Molded Verdict, 1/23/23, at 1-2.

- 10 -

On January 10, 2023, Appellants filed a notice of appeal from the trial court's order ruling on post-verdict motions.[13] On January 11, 2023, Appellees filed its notice of cross-appeal[14] from the same order.[15]

_____

[13] Although the parties state in their notices of appeal/cross-appeal that they are appealing from the trial court's order dated December 12, 2022, we note that the order was actually entered on the docket and the parties were given Pa.R.C.P. 236 notice of that order on December 13, 2022. **See** Pa.R.A.P. 108(b) (date of entry of civil order under Pennsylvania Rules of Civil Procedure "shall be the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.[]R.[]C[.]P. 236(b)"). Thus, we have amended the caption accordingly. Moreover, because the December 13, 2022 order contemporaneously enters permanent injunctive relief, the parties have also preserved any issue relating to the permanent injunction.

[14] On June 20, 2023, our Court issued an order stating that Appellees' single notice of cross-appeal did not comply with **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), because it listed both docket numbers, but was docketed only at No. 21-11790. However, in light of **Commonwealth v. Young**, 280 A.3d 1049 (Pa. 2022), our Court remanded the matter to have Appellees correct the defect by filing two amended notices of cross-appeal in the trial court "which shall contain only No. 21-11790 and the instant appellate docket number, No. 428 MDA 2023, in its caption and shall also contain the appellate number in its text." Order, 6/20/23, at 1. The order further directed that "[a]t [docket] No. 21-12980, counsel shall file an amended notice of cross-appeal . . . containing only No. 21-12980 in its caption," **id.** at 1-2, and the trial court shall "immediately docket Lystn, LLC's notice of cross-appeal as filed January 11, 2023." Upon receipt of the amended notices of cross-appeal from the trial court, our Court assigned a new appellate docket number, 116 MDA 2023, to the amended notice of cross-appeal for No. 21-12980.

Appellees complied and, on June 26, 2023, filed an amended notice of cross-appeal listing only No. 21-11790 at our appellate docket 428 MDA 2023. Nevertheless, as previously stated, Appellees have failed to file a cross-appeal with this Court. **See supra** at n.1. However, as we note **infra** at 21, Appellees also request that we "order the release to them of the cash security they posted with the lower court in order to effectuate the lower court's
*(Footnote Continued Next Page)*

On March 17, 2023, the trial court issued a memorandum opinion suggesting Appellants' issues should be dismissed or deemed waived for the following reasons: (1) the appeal is from a non-appealable interlocutory order prior to final judgment being entered; (2) Appellants failed to file a timely court-ordered Pa.R.A.P. 1925(b) statement; (3) Appellants failed to serve a Rule 1925(b) statement on the trial judge; and (4) Appellants failed to comport with Rule 1925(b)(4)(iv) and (vii) requirements. *See* Memorandum Opinion, at 3/17/23, at 8-9. The court prefaced its decision with the following, "In the event the Honorable Superior Court disagrees with all of the foregoing and wishes for the [t]rial [c]ourt to undertake a substantive review and response to Appellant[s'] [c]oncise [s]tatement, the [t]rial [c]ourt would humbly request 60 days to undertake such review and prepare an opinion." *Id.* at 9. On June 20, 2023, our Court directed the trial court prepare a supplemental opinion expanding upon its earlier March 17, 2023 opinion. *See*

_____

[p]reliminary [i]njunction [o]rder." Appellees' Brief at 22-23. *See also* Appellees' Brief in 116 MDA 2023/1058 MDA 2023, at 23.

[15] On February 3, 2023, Appellees praeciped to enter judgment on the molded verdict. Judgment was entered on the verdict on February 6, 2023. Thus, our appellate jurisdiction has been perfected. *See Keystone Dedicated Logistics, Inc. v. JGB Enters.*, 77 A.3d 1, *2 n.1 (Pa. Super. 2013) (although appeal from order disposing of post-trial motions is interlocutory, "[o]nce that judgment is entered . . . an appellate court's jurisdiction is perfected [] even if the appeal is filed prior to the entry of judgment"); *id.* ("it is clear that jurisdiction in appellate courts may be perfected after an appeal notice has been filed upon the docketing of a final judgment"). *See also* Pa.R.A.P. 905(a)(5) (notice of appeal filed after announcement of determination but before entry of appealable order "shall be treated as filed after such entry and on the day thereof").

Order, 6/20/23. The trial court complied and filed a supplemental opinion on September 27, 2023.

On appeal, Appellants raise the following claims for our review:

(1) Did the trial court err in refusing to award post[-]judgment interest in favor of [] Stone and [the] Estate of Jaqueline Hill and against Lystn [], [IGSI], [F4L], and Biodynamic [], and further err in computing the amount of pre[-]judgment interest and by failing to aggregate the damages and pre[-]judgment interest as one single sum on which post[-]judgment interest is awarded?

(2) Did the trial court err in refusing to dissolve the preliminary injunction, and in refusing to hold an evidentiary hearing for damages against the bond, which preliminary injunction was awarded in favor of Lystn [], [IGSI], [F4L], and Biodynamic [] and against [] Stone, [the] Estate of Jacqueline Hill, and Initial[]?

Appellant's Brief, at 9.

Before addressing the merits of an appellant's claims, we must evaluate whether the appellant has properly preserved those issues for review, as required by Rule 1925(b). *See Greater Erie Indus. Deve. Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 223 (Pa. Super. 2014). Instantly, the trial court suggests that Appellants filed their Rule 1925(b) statement late, on February 13, 2023, where the court's Rule 1925(b) order stated that it be filed no later than February 10, 2023. Rule 1925(b)(2)(i) clearly states that "[t]he judge shall allow the appellant at least 21 days **from the date of the order's entry on the docket** for the filing and service of the Statement." Pa.R.A.P. 1925(b)(2)(i) (emphasis added). Here, the court's Rule 1925(a) order was entered on the docket on January 23, 2023. Thus, Appellants filed their Rule 1925(b) statement 21 days from the docketed date of the Rule 1925(a) order. Accordingly, it is timely.

- 13 -

The trial court also notes that Appellants failed to serve their Rule 1925(b) statement upon the trial judge, in contravention of its Rule 1925(a) order and Rule 1925 itself. In ***Berg v. Nationwide Mut. Ins. Co.***, 6 A.3d 1002 (Pa. 2010), our Supreme Court stated that "in determining whether an appellant has waived his issues on appeal based on non-compliance with [Rule] 1925, it is the trial court's order that triggers an appellant's obligation under the rule, and, therefore, we look first to the language of that order." ***Id.*** at 1007-08. In the instant case the trial court's Rule 1925(b) order directed [Appellants] to file of record, **and serve upon the trial judge**[,] a concise statement of the errors complained of on appeal[.]" Order, 1/23/23, at 1 (emphasis added). Thus, Appellants did not substantially comply with the trial court's order. ***See Berg***, ***supra***. However, Rule 1925(b)(1) also states that "[s]ervice on the judge **shall be at the location specified in the order**[.]" Pa.R.A.P. 1925(b)(3)(iii) (emphasis added). Instantly, the trial court's Rule 1925(b) order does not list any physical address, email address, or other place where Appellants could serve the Statement upon the trial judge. Therefore, we do not find Appellants' misstep is fatal to our review of their issues on appeal. ***See Rahn v. CONRAIL***, 254 A.3d 738, 746-47 (Pa. Super. 2021); ***see also*** Pa.R.A.P. 1925(b)(4).

Appellants first argue that the trial court erred by refusing to award them post-judgment interest where they were the verdict winners of the ownership-buyout breach of contract claim.

In Pennsylvania, "judgment for a specific sum of money **shall** bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment, if the judgment is not entered upon a verdict or award." 42 Pa.C.S.A. § 8101 (emphasis added). Moreover,

> [t]he purpose of post[-]judgment interest is to compensate a successful plaintiff for being deprived of compensation for his or her loss during the time between ascertainment of the damage and payment by the defendant. [*See*] 47 C.J.S. INTEREST & USURY § 110. Giving the judgment debtor the benefit of an erroneous court ruling, during which time the judgment debtor is relieved from paying post-judgment interest, hampers the very purpose behind such a policy. Such a construction needlessly and, we find, unjustly benefits the recipient of an erroneous ruling, while depriving an innocent plaintiff of his or her rightful award. *See, e.g.*, *Hewitt v. General Tire & Rubber Co.*, 5 Utah 2d 379, 302 P.2d 712, 714 (Ut. 1956) (holding that plaintiff was entitled to post-judgment interest from date of original verdict and not just from the date on which the Supreme Court reversed the trial court's entry of a directed verdict, noting "we [cannot] see any good reason why plaintiff should lose his [post-judgment] interest because defendant was able to convince the trial court to make an erroneous ruling[]"); *Espinoza v. Rossini*, 257 Cal. App. 2d 567, 573, 65 Cal. Rptr. 110 (Cal. Ct. App. 1967) (finding that JNOV entered by trial court, but overruled on appeal results in entitlement to post-judgment interest from date of original verdict: "[t]here is no reason to deprive the winning party of the interest to which he has been entitled from the date of the original entry of the verdict[]").

*Hutchinson v. Luddy*, 946 A.2d 744, 752-53 (Pa. Super. 2008) (some quotation marks omitted).

Here, while Appellees were the net verdict winners at trial on the trade secret/misappropriation claims, Appellants were successful in their breach of contract claims for Appellees' failure to honor the buyout provision of the parties' agreements. Under section 8101, "the prevailing party is 'entitled to

interest on a judgment for a specific sum of money from the date of the verdict.'"  **Young v. Lippl**, 251 A.3d 405, 423 (Pa. Super. 2021).  **See Pittsburgh Constr. Co. v. Griffith**, 834 A.2d 572, 590 (Pa. Super. 2003) ("Statutory post-judgment interest '**is a matter of right** where damages are ascertainable by computation[']") (emphasis added).  Even though a dispute may exist regarding the amount due under section 8101, a plaintiff is still entitled to post-judgment interest.

The trial court does not address why it failed to award Appellants *any* post-judgment interest on the jury's $2,090,000.00 verdict in their favor.  Accordingly, we must remand the matter for a determination of the appropriate amount of post-judgment interest that is due Appellants.  **See Pittsburgh Constr.**, **supra** at 519 (court has power to mold verdict by adding interest that is due); **see also Kessler v. Old Guard Mut. Ins.**, 570 A.2d 569, 571-72 (Pa. Super. 1990) ("[F]or purposes of computing interest, judgment and verdict are synonymous, and the date from which interest accrues is the date of verdict, not the date judgment is finally entered.") (citation omitted).

Appellants further claim that the court erred by "discounting" the amount of pre-judgment interest it awarded them where the record "unequivocally shows the Appellees breached their contract . . . [and] where th[e] trial court entered a preliminary injunction that put Appellants out of business and barred [them] from seeking employment in their profession." **Id.** at 24.  Specifically, Appellants claim that the record supports using April

- 16 -

4, 2021,[16] as the date when their right to pre-judgment interest began to accrue because this is when "the 30-day window to negotiate had expired after they exercised the purchase option on March 5, 2021." Appellants' Post-Verdict Motions, at 4.

With regard to computation of pre-judgment interest, the trial court awarded Appellants pre-judgment interest "relative to the damages awarded for Appellees' breach of the operating and shareholder agreements." Trial Court Supplemental Opinion, 9/27/23, at 9. The court computed that interest as accruing from July 21, 2021—the date Stone and Hill filed their complaint against the Lystn Companies at docket 21-11790. **See** Trial Court Supplemental Opinion, 9/27/23, at 49 ("The [t]rial [c]ourt determined that the most appropriate date triggering pre[-]judgment interest [was] the date on which [Stone and Hill] asserted their right to declaratory relief, after months of engaging in conduct inconsistent with their demand."); **see also** Order, 12/22/22 (trial court calculating pre-judgment interest starting to accrue from date Stone and Hill filed suit to enforce buyout provisions under agreements).

> It is well-settled that in contract cases, pre[-]judgment interest is awardable as of right. On this point, the Pennsylvania Supreme Court has held that **the right to interest begins at the time payment is withheld after it has been the duty of the debtor to make such payment.** The basic premise underlying the award of pre[-]judgment interest to a party centers on the fact that the breaching party has deprived the injured party of using

---

[16] The trial court incorrectly asserts that Appellants sought pre[-]judgment interest from February 12, 2021—when they first requested repurchase of their shares. **See** Trial Court Supplemental Opinion, 9/27/23, at 49, 51.

interest accrued on money which was rightfully due and owing to the injured party.

***Portside Investors, L.P. v. Northern Ins. Co.***, 41 A.3d 1, \*15 (Pa. Super. 2011) (emphasis added) (quotations and citations omitted).  The right to pre-judgment interest "arises upon breach or discontinuance of the contract provided the damages are then ascertainable by computation and even though a bona fide dispute exists as to the amount of the indebtedness."  ***Palmgree v. Palmer's Garage, Inc.***, 117 A.2d 721, 722 (Pa. 1955).

Here, the trial court rejected Appellants' proposed date (April 4, 2021) to begin the computation of pre-judgment interest because it found that Stone and Hill continued to participate in and enjoy the benefits of being owners of Lystn for several months beyond that date—extending well into the summer of 2021.  Moreover, the court noted that the jury never determined the date that Appellees began withholding payment from Appellants under the agreements.

We disagree with the court's conclusion that Appellees were not "definitely clear" that Stone and Hill sought to enforce their buyout rights under the agreements until they filed their lawsuit in July 2021.  The facts show that in March 2021, Stone and Hill invoked the "Buyout Provision" under the Agreement and the Lystn members voted for Lystn to exercise a purchase option for Hill's and Stone's membership interests.  Then, at the end of April 2021, Stone and Hill resigned from Lystn and all of its affiliated companies. Finally, in May 2021, Stone and Hill publicly announced their resignation from Lystn.  Notably, once Lystn received Stone's and Hill's transfer notices, Lystn

was required to begin negotiating to determine the purchase price of their membership interests under the agreement. Finally, the court acknowledges that the jury found Appellees had breached their obligation to repurchase Stone's and Hill's shares and member interests after they demanded same on February 12, 2021. *See* Trial Court Supplemental Opinion, 9/27/23, at 17. *See Portside Investors*, *supra* at *15 ("the right to [pre-judgment] interest begins at the time payment is withheld after it has been the duty of the debtor to make such payment").

Based on these facts, using the date of the filing of Stone and Hill's complaint (July 2021) as the triggering date for pre-judgment interest does not comport with the well-established principle that pre-judgment interest accrues at the time payment has been wrongfully withheld by the debtor. *Portside Investors*, *supra*. Allowance of such interest "does not depend upon discretion[,] but it [i]s a legal right . . . which arises upon breach of discontinuance of the contract." *Palmgree*, *supra*.[17] Based on the record, Appellees knew or should have known on April 4, 2021, that Appellants had enforced their buyout rights under the agreement. *See* Trial Court Supplemental Opinion, 9/27/23, at 50 (trial court acknowledging pre-judgment interest triggered "by the clause in the business agreements setting

_____

[17] By using July 2021 as the triggering date for the accrual of pre-judgment interest, the trial court does not claim that damages were not yet ascertainable as of April 2021. In fact, in its supplemental opinion, it rules to the contrary in response to Appellees' argument on the issue. *See* Supplemental Trial Court Opinion, 9/27/23, at 50 ("Appellees seemingly ignore that, even if the amount is not readily and specifically identifiable prior to trial, it does not preclude the awarding of pre[-]judgment interest.").

forth the process for company reacquisition of shares and member interests"). This finding is supported by the jury's verdict that Appellants were due a buyout amount for their respective shares and interests. Thus, we reverse and remand for the trial court to recalculate Appellants' prejudgment interest using April 4, 2021, as the triggering date for the accrual of pre-judgment interest.

In their final claim on appeal, Appellants allege that the trial court improperly denied their post-trial motion requesting that it vacate the preliminary injunction and hold a hearing on damages against the injunctive bond. Relatedly, Appellees claim that they should receive a refund of the $500,000.00 cash they posted, in lieu of a preliminary injunction bond, since the court subsequently entered a permanent injunction.

At related appeals (1403 MDA 2021/1254 MDA 2022/1255MDA 2022), we have already determined that the trial court's permanent injunction, while slightly narrower in scope than the preliminary injunction, addressed "the same fundamental substantive issues" as the preliminary injunction. Thus, we concluded that any appeal from the preliminary injunction was rendered moot by the entry of the permanent injunction.

With regard to the cash Appellees posted, in lieu of a preliminary injunction bond, we recognize that pursuant to Pa.R.C.P. 1531(b):

> (b) Except when the plaintiff is the Commonwealth of Pennsylvania, a political subdivision or a department, board, commission, instrumentality or officer of the Commonwealth or of a political subdivision, a preliminary or special injunction shall be granted only if

(1) the plaintiff files a bond in an amount fixed and with
security approved by the court, naming the Commonwealth
as obligee, conditioned that if the injunction is dissolved
because improperly granted or for failure to hold a hearing,
the plaintiff shall pay to any person injured all damages
sustained by reason of granting the injunction and all legally
taxable costs and fees, or

(2) the plaintiff deposits with the prothonotary legal tender
of the United States in an amount fixed by the court to be
held by the prothonotary upon the same condition as
provided for the injunction bond.

Pa.R.C.P. 1531(b)(1)-(2).  Our Court further explained the necessity of

injunctive bonds as follows:

A bond is required so as to provide protection to a wrongly
enjoined party; the bond provides a source of funds which may be
used to pay to an injured defendant the damages sustained by
reason of granting the injunction.  Because the rule is mandatory,
some protection will always be afforded an enjoined party.
However, in practice, the bond amount is not set to cover "all
damages" but **only those that are reasonably foreseeable**.
The trial court must determine the amount after balancing the
equities involved on a case by case basis.

*Christo v. Tuscany, Inc.*, 533 A.3d 461, 467 (Pa. Super. 1987) (emphasis

added).

In *College Watercolor Grp. Inc. v. William H. Newbauer, Inc.*, 360

A.2d 200 (Pa. 1976), appellants contended that the trial court erred in

dissolving a $10,000.00 preliminary injunction bond posted by the appellee.

In that case, our Supreme Court emphasized the necessity of the bond "to

protect appellants in the event that the preliminary injunction was improperly

granted and damages were sustained[.]" *Id.* at 207-08.  The Supreme Court

reversed the trial court's order dissolving the bond, concluding that "the

- 21 -

permanent injunction[18] issued was narrower [in scope] than the preliminary injunction, [and, thus,] the appellants may be able to prove damages in a later proceeding." *Id.* at 208.

Unlike the narrow permanent injunction in *College Watercolor* which prevented dissolution of the injunctive bond, we have concluded that the instant permanent injunction addressed the same fundamental substantive issues as that of the preliminary injunction. Therefore, since Appellees have succeeded on appeal with regard to the issue of injunctive relief, there is no longer a need for an injunctive bond because appellants are incapable of proving damages at a later proceeding. *Id.* Thus, upon remand, the trial court shall refund to Appellees the cash they posted in lieu of an injunctive bond prior to the entry of the preliminary injunction.

---

[18] While the permanent injunction in *College Watercolor* enjoined appellants from utilizing appellee's trade secrets involving water color reproductions, the court's preliminary injunction in that case was much broader, restraining appellants from:

> selling, displaying or giving away for promotional purposes, any watercolors, watercolor originals, copies, prints or other reproductions in any form belonging to or provided by plaintiff, or copies from or otherwise taken from any materials owned or supplied to defendants by plaintiff, or any such materials manufactured or processed by said defendants, or either of them directly or indirectly, by methods heretofore devised by said defendants, said methods having utilized trade secrets improperly obtained from the plaintiff, and said defendants are hereby permanently enjoined from infringing upon plaintiff's registered trademark "Gray's."

*Id.* at 202.

Order affirmed in part and reversed in part. Case remanded with instructions.[19] Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/01/2025

---

[19] Although Appellants argue that the trial court should aggregate the damages and pre-judgment interest as one single sum on which post-judgment interest is awarded, they support their argument with a non-binding Florida trial court decision. **See** Appellants' Brief, at 30. We have found no Pennsylvania authority supporting this legal proposition. Rather, it is well-established that post-judgment interest is a procedural construct that "compensate[s] a successful plaintiff for the time between his entitlement to damages and the actual payment of those damages." **Lockley v. CSX Transp., Inc.**, 66 A.3d 322, 327 (Pa. Super. 2013) (citations omitted). **See also id.** at 329 (unlike delay damages, post-judgment interest runs **after** jury's award).